THE GEORGE'S CREEK COAL AND IRON COMPANY *vs.* THE NEW CENTRAL COAL COMPANY.

*Appeal—Inquisition for the Condemnation of land for the Construction of a Railroad—Power of the Circuit Court to direct another Inquisition to be taken, after the first has been set aside—Notice to Land-owner of the application for an Inquisition, not required—Warrant for an Inquisition.*

No appeal lies from an order of the Circuit Court confirming an inquisition condemning lands for the construction of a railroad, unless the Court exceeds its jurisdiction in passing such order.

George's Creek Coal and Iron Co. *vs.* New Central Coal Co.

Where an inquisition for the condemnation of land for the construction of a railroad, returned pursuant to the provisions of the Act of Assembly relating thereto, is set aside, the Court may direct another to be taken in the manner prescribed by the Act; and the power to so direct continues and remains in the Court until the company seeking the condemnation may choose to call for its exercise. It may be exerted at the term at which the first inquisition is set aside, or at any subsequent term, so long as the power to condemn under the company's charter, exists.

Under the provisions of the Act of Assembly regulating the condemnation of land for the construction of a railroad, no notice is required to be given to the land-owner, either of the original application to the justice of the peace by the company seeking the condemnation, or of that to the Court for a new inquisition, when the first has been set aside.·

A warrant issued in pursuance of an order of the Circuit Court, by the Clerk to the sheriff, directing a second inquisition for the condemnation of land for the use of a railroad, to be taken, the first having been set aside, is not one of the regular writs known under the head of process, and is not essential to the validity of the inquisition. The power of the Court under the statute to "direct another inquisition to be taken" after the first has been set aside, may be carried out by an order addressed directly to the sheriff commanding him to proceed and take a new inquisition.

APPEAL from the Circuit Court for Allegany County.

The case is fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER, J.

*Julian I. Alexander*, for the appellant.

When the first inquisition was set aside, the appellant was out of Court. *Co. Litt.*, 362*a; Co. Litt.*, 134*b; Carth.*, 86, 87; *Sid.*, 16; *Munnikuyson vs. Dorsett*, 2 *H. & G.*, 378; *Keirle vs. Shriver*, 11 *G. & J.*, 406. Consequently the appellant was not bound to take notice of any motion made in the case, and if the appellee wanted any thing further, some process ought to have been had to bring the appellant into Court. Hence the making of

the order of 5th March, 1873, being confessedly passed without notice to the appellant, was a surprise upon the appellant, was irregularly passed, and ought to be set aside. The charter of the appellee, incorporating the provisions of the charter of the Baltimore and Ohio Railroad Company, provides, that if an inquisition is set aside, the Court may direct a new inquisition to be taken. The Court setting the first inquisition aside did not order a new inquisition. If the Court attempted to do so afterwards, can it be said, that we ought not to have had an opportunity to show cause against it? The award of the inquisition, being a judgment of the Court by which we are bound, we ought to have had an opportunity of resisting it. *Com. Dig. Process, (A.* 1); *Mears vs. Remare,* 33 *Md.,* 246; *Capel vs. Child,* 2 *Cr. & J.,* 558; *Bonaker vs. Evans,* 16 *Q. B.,* 162, (71 *Eng. C. L.*); *Wright vs. Wright,* 2 *Md.,* 429; *McKim vs. Mason,* 3 *Md. Ch. Dec.,* 188; *Belt vs. Blackburn,* 28 *Md.,* 243; *Sisk vs. Garey,* 27 *Md.,* 419; *Graff's Case,* 18 *Md.,* 364; *Reg. vs. Archbishop of Canterbury,* 1 *E. & E.,* 545; *Willis vs. Childe,* 13 *Beav.,* 117; *Swaile vs. Leaver,* 1 *Barnes,* 217; *Braly vs. Baldock,* 1 *Barnes,* 222; *Smithson vs. Boughton,* 2 *Barnes,* 204.

But here there is a motion for a new inquisition in April Term, 1872. The appellee files a second motion 27th February, 1873. As is apparent from the order of amendment, the first motion had not been regularly continued, indeed nothing had been done with it. Now it was either discontinued, or abated, or not. If it was, then the motion of February, 1873, was the effective one on which the judgment was to be passed. If it was not, then the second motion was irregular, and being the one on which the judgment was based, the judgment was irregular. A man is not entitled to two motions at one time. *Bunting vs. Teasdale,* 1 *Barnes,* 156; *Wickens vs. Cox,* 6 *Dowl.,* 693; *see* 32 *Md.,* 150.

What became of the motion of April Term, 1872? It must in any event have been abandoned by the new motion or petition. The cases all show that unless continued regularly the motion must abate, and it must be continued from term to term. 7 *Bac. Abr.*, 683; *Truett vs. Legg*, 32 *Md.*, 147; *Hazlehurst vs. Morris*, 28 *Md.*, 67; *Munnikuyson vs. Dorsett*, 2 *H. & G.*, 374; *Evans' Prac.*, 304; *Kent vs. McElderry*, 9 *Gill*, 493; *Hall vs. Sewell*, 9 *Gill*, 154.

The Court admitted this and *ex officio* amended the record by entering the continuances. But what was the effect of the rule as to continuance upon the power of the Court? In *Com. Dig. Pleader, V.* 1, a defendant on *ca. sa.* was discharged on written agreement. A year after a new *ca. sa.* issues without continuance on the roll, it shall be set aside. See *Dunbar vs. Conway*, 11 *G. & J.*, 92; *State vs. Jones*, 8 *Md.*, 88; *Moreland vs. Bowling*, 3 *Gill*, 500; *Newcomer vs. Keedy*, 9 *Gill*, 263; *Frazier vs. Griffie*, 8 *Md.*, 50.

But had the Court any authority to amend the record *ex officio* after the lapse of several terms? No motion was made by the appellee for any amendment, but the Court undertakes to do it *ex officio*. The Court has no such authority. It cannot be doubted that the entry of continuances is an amendment of the record. It is equally clear that the omission of the entries was not a clerical misprision. 1st, because if the setting aside of the first inquisition put the appellant out of Court, the continuances ought not to have been entered by the Clerk, and the entry of them now is against the truth of the fact; and 2nd, the entry of continuances or their *non-entry* is not a clerical act which takes place of course without an order from the Court or the parties, else there would never be any occasion for ordering the continuances to be made or brought up. The continuance is always given *prece partium* or *prece partis* who is entitled to ask for it.

Has then the Court *ex officio* power thus to alter records after the term? At common law it certainly has not. *Harrington's Case, Yelv.*, 97, *Noy*, 120; *Peplow vs. Rowley, Cro. Jac.*, 357. What the Court therefore cannot *ex officio* do in the first instance, it cannot do in amendment of the record. And the same thing is shewn by the Act of 1785, ch. 80, sec. 11, which requires that upon the reference of a cause, it shall be continued: here the omission to enter them is a clerical error. So the Court on striking out a judgment under the Act of 1787, ch. 9, sec. 6, is bound to order regular continuances to be entered on the docket, and if it fail to do so an appeal will lie. *Munnikuyson vs. Dorsett*, 2 *H. & G.*, 374. But if this were a mere matter of clerical misprision, could it be the ground of an appeal? So far from that being the case, the duty of entering the continuances is an essential condition to the exercise of the power of the Court to strike out the judgment, for otherwise the action would be discontinued.

In England, it is thoroughly understood, that the Court has no such power of amendment *ex officio.* The 36th section of the Common Law Procedure Act of 1860, while giving the most extensive powers of amendment, whether the defect be that of the *party applying* to amend or not, concludes "all such amendments as may be necessary for the purpose of determining in the existing suit, the real question in controversy between the parties, shall be so made, *if duly applied for.*" No law or authority permits the Court to amend a record after the term *ex officio*, as was done here without an application from either party, without notice to either party that the amendment was to be made, and without giving the appellant who was out of Court, any opportunity of showing why it ought not to be brought in.

The order of the 5th March, 1873, is wrong, in directing the Clerk to issue a warrant for a new inquisition. The law gives the Court no authority to direct the clerk to issue

a warrant, nor does it give the clerk any authority to issue a warrant to the sheriff. The act of directing the sheriff to take a new inquisition must be the act of the Court, not the act of the clerk of the Court, and if an award of a new inquisition be made by the Court, the process of the Court must issue on it. Then, if the process is to be the process of the Court, it is inconceivable how a warrant could be an appropriate process, for a warrant is a precept under the hand and seal of the person issuing it, and, doubtless, the Judges of the Court would never sign and seal a warrant or precept, and if they did, it would be merely void. So the clerk can only set the seal of the Court to process of the State, authorized by law to be issued. But this sort of warrant is utterly unknown to the law and the practice, and is only another of those novelties which appear in this case. The Court did, indeed, amend the warrant, by directing it to be properly tested and made as near a writ in that respect as possible, but then the effect of the amendment was to make the process issued different from that ordered. The order ought to have been amended, but the term had passed.

The warrant is wrong—it merely orders the sheriff to summon the jury to meet on the land and value it. It does not direct him to take an inquisition; it does not direct him in what manner he is to take it; it does not direct him to return it. An inquisition is a proceeding well known to the law, and being intended to be recorded and a judgment entered on it, must be directed where it is intended to be done. A precedent may be found in 2 *Harr. Ent.*, 698, and again, *Ib.* 701, and elsewhere in the book.

In all these the sheriff is directed to make known to the Court, at a certain term, under his seal and the seals of the jurors, the inquisition he makes, and he is directed to return the writ. All these necessary requirements are wanting in this writ, and the writ was not amended in these respects by the Court.

George's Creek Coal and Iron Co. *vs.* New Central Coal Co.

Again, the original document was not tested, and this was *ex officio* amended by the Court. But the *teste* now is wrong. It is settled that the *teste* of a writ is the last day of the preceding term. 2 *Harr. Ent.*, 612. The writ was issued in January term, 1873, of the Circuit Court for Allegany County; consequently, it ought to have been tested on the last day of the preceding October term, 1873, of that Court, instead of which, it is tested on the 1st day of the January term, in which it is issued.

The Court conceded that the writ was irregular in the form it first issued, but without any prayer therefor by the parties, amended it *ex officio*. The Court had no such authority of its own motion to make the amendment. *Eakle vs. Smith*, 24 *Md.*, 360; *Kenworthy vs. Pepiat*, 4 *B. & A.*, 288. But the Court had no authority to make the amendment at all.

If the writ was amendable at all, it was amendable only on the ground that the error was a mistake of the clerk, *i. e.*, a clerical misprision. *Trail vs. Snouffer*, 6 *Md.*, 308. But here the mistake was not that of the clerk. He was told to issue his warrant, not to issue a writ. If there was any mistake, it was the mistake of the Court, which renders the whole erroneous. Now where the award on the roll and the writ are both mistaken, it cannot be amended. 1 *Show.*, 61; *West vs. Hughes*, 1 *H. & J.*, 6; *Turner vs. Walker*, 3 *G. & J.*, 385; *Boyle vs. The State*, 25 *Md.*, 509; *Wells vs. McGregor*, 13 *Wall.*, 188; *Hampton vs. Rouse*, 15 *Wall.*, 684.

Lastly, the order and the writ are wrong in not mentioning, with certainty, the lands to be condemned. Only the identical property comprehended in the original inquisition, was liable to be again viewed and condemned under the new inquisition, but here the appellee is authorized to condemn generally the lands of the appellant, and is not restricted to the precise lands contained in the preceding inquisition. See 2 *Harr. Ent.*, 776; *Rex vs. Croke, Cowp.*,

George's Creek Coal and Iron Co. *vs.* New Central Coal Co.

26; *Neal vs. Pittsburg R. R.*, 2 *Grant*, (*Penn.*,) 137; *Strang vs. Beloit and Madison R. R. Co.*, 16 *Wis.*, 635; *Galena and Chicago Railroad Co. vs. Pound*, 22 *Ill.*, 399; *Stone vs. Commercial Railway Co.*, 4 *Myl. & C.*, 122; *Waters vs. Duvall*, 6 *G. & J.*, 79.

*William Walsh*, for the appellee.

The Circuit Court, sitting in a condemnation case, is a Court of exclusive jurisdiction, and no appeal lies from its action in finally confirming or setting aside an inquisition, much less from a mere interlocutory order passed in the cause, to move it along to a final termination. *The Wil. & Susq. R. R. Co. vs. Condon*, 8 *G. & J.*, 443; *Balto. & Havre de Grace Turnpike Co. vs. Nor. Central R. R. Co.*, 15 *Md.*, 193; *Crockett vs. Park*, 7 *Gill*, 237; *Western Md. R. R. Co. vs. Patterson*, 37 *Md.*, 126; *New Central Co. vs. Geo. Cr. C. & I. Co.*, 37 *Md.*, 537, 565; *Chenowith vs. Smith, et al.*, 29 *Md.*, 18; *Kinnear & Willis vs. Lee & Reynolds*, 28 *Md.*, 488.

Even if an appeal did lie in this case, it was perfectly competent for the Court below to enter the continuances, and to order the Clerk to teste the warrant for the new inquisition in the name of the Chief Justice, as was done.

It was not necessary that the warrant should be tested; it was issued under the hand of the Clerk and seal of the Court, and was not any of the regular writs known under the head of process—a verbal order to the sheriff, by the Court, after quashing an inquisition, directing him to go and take a new one, would be sufficient. But even if the "teste," in the name of the Chief Justice, was required, it was only the merest form, and would be amendable as a matter of course, even if it were a *ca. sa.* to take the person. *Brown vs. Aplin*, 1 *Cowen*, 203; *People vs. Albany*, 9 *Wendell*, 486; *Gordon & Wood vs. Valentine and Smedes*, 16 *Johns.*, 145; *Bronson, et al. vs. Earl*, 17 *Johns.*, 63; *Converse vs. Demariscotta*, 15 *Maine*, 431; *Reynolds vs. Damrell*, 19 *N. H.*, 394; *Nash vs. Brophy*, 13 *Metcalf*, 476.

George's Creek Coal and Iron Co. *vs.* New Central Coal Co.

MILLER, J., delivered the opinion of the Court.

The appellant's counsel concedes that no appeal lies from the order of the Circuit Court, confirming the inquisition condemning its lands for the construction of the appellee's railroad. It was settled in *Condon's Case,* 8 *G. & J.,* 443, that the jurisdiction of the Circuit Court in such cases is special and limited, and no appeal lies from its action therein, to any other Court. The law of that case has been recognized and adopted by all the subsequent decisions of this Court on that subject. The appeal in this case is not taken from the order confirming the inquisition, but from an intermediate order, overruling the appellant's motion to quash and set aside an order for a new inquisition and warrant, and in this, it is insisted the Circuit Court exceeded its jurisdiction, and thence the appeal lies.

The appellee, by its charter, (Acts of 1865, ch. 206, and 1872, ch. 50,) was invested with the same power to condemn lands for the construction of its road, as that granted to the Baltimore and Ohio railroad company by the 15th section of the Act of 1826, ch. 123, incorporating that company, and under the provisions of this section, the proceedings in this case were had. These proceedings are not set out in the record in the order in which they occurred, but they appear to have been as follows:

The appellee, on the 22nd of January, 1872, applied for and obtained from a Justice of the Peace, in the usual form, a warrant to condemn a right of way for its road over the lands of the appellant. Under this warrant the sheriff summoned a jury who met upon the land, and on the 2nd of February, 1872, found an inquisition, which was returned to the Circuit Court, at its following April term, for confirmation. The appellant filed exceptions to its ratification, which were heard, and the inquisition was set aside by the Court at its said April term, 1872. The appellee thereupon moved the Court for a new inquisition, and the case was then continued until the following October term. The

28                    v. 40

granting of this motion was not further pressed by the appellee until the 27th of February, 1873, when a petition was filed, explaining the delay.    That petition states that on the 22nd of February, 1872, while the first inquisition was pending before the Court for confirmation, the appellant filed a bill on the equity side of the Court for an injunction to prevent the appellee from proceeding to acquire its right of way, and on the 24th of that month the injunction was granted by which the appellee was prohibited from obtaining an order for a new inquisition; that this injunction was continued at the hearing of the motion to dissolve, and the appellee thereupon took an appeal from the order granting the injunction and refusing to dissolve the same; that both these orders were reversed by the Court of Appeals and the bill dismissed, which fact the appellee had just ascertained, and therefore, now applies to the Court to order a new inquisition.    Upon this application, the Court, on the 5th of March, 1873, passed an order reciting the dissolution of the injunction by the Court of Appeals, and directing a warrant for another inquisition to be issued by its Clerk.    In obedience to this order, the Clerk issued a warrant to the sheriff, on the 25th of the same month. This warrant appears to have been signed by the Clerk only. On the 29th of the same month (March, 1873,) the appellant filed its motion in writing, to set aside the order of the 5th of March, granting a new inquisition, and assigned numerous reasons in support of that motion.    On the 1st of April following, the Court passed an order setting this motion down for hearing on the 21st day of April, and further ordered that the appellant, in taking any steps to resist the inquisition directed by the order of the 5th of March, shall not be taken to have waived in any manner its right to object to the passage of that order, but may take any exceptions thereto which it may be advised to take.    The sheriff then proceeded under the warrant from the Clerk to summon a jury, who met upon the land, and on the 8th of

April, 1873, found an inquisition which was returned by the sheriff to the Clerk of the Court, on the 12th of that month for confirmation. The appellant then filed exceptions to this inquisition, and moved that it be quashed and set aside. Thereupon, by consent of parties, these exceptions were set down for hearing on the 25th of April, on which day the appellant renewed its motion to set aside the order of the 5th of March, and filed a challenge to the array of jurors. The exceptions and this motion were then heard, and on the 5th of May, 1873, the Court passed an order directing its Clerk to enter upon the docket of April term, 1872, after the motion for another inquisition, "under *curia* and continued," and then to docket the case on the dockets of the several terms, including the January term, 1873, and make entries of continuances, and also to amend the process issued to the sheriff, under the order of Court, to take a new inquisition, by testing the same in the name of the Chief Justice, in the usual way—that is, as of the first day of the January term, 1873. The Clerk then made the docket entries and amended the warrant as directed, and on the same day (May 5th, 1873,) the Court overruled the motion to set aside the order directing a new inquisition, and confirmed the inquisition, notwithstanding the objections. The appeal, as already stated, is from the judgment overruling the appellant's motion to quash and set aside the order for a new inquisition and warrant, and the warrant itself.

Many of the objections to these proceedings urged in argument go to mere formal irregularities and do not touch the question of jurisdiction, which alone can be considered by this Court. Our inquiry must be confined to the question, whether the Circuit Court by these proceedings, has in any respect exceeded the power and jurisdiction conferred upon it by the statute under which it acted, so that this appeal can be entertained and its action reversed. Such of the objections as appear to us to reach this question we shall now consider.

1st. It is said the judgment setting aside the first inquisition was a final judgment in favor of the appellant, and no new inquisition having been ordered at that time, or during the term at which the judgment was rendered, the Court had no power afterwards to alter the judgment or order a new inquisition, and further that the motion for a new inquisition then made abated by not being regularly continued.    Much of the argument in support of this position was rested upon the formal extension set out in the record, of the order or judgment setting aside the inquisition.    As thus set out it is that the appellee "take nothing by its writ of inquisition aforesaid, but that the same be quashed and that" the appellant "*go thereof without day, &c.*"    In explanation of its appearance in this form the clerk states that the record was made up according to the old form of making up records, at the request and by the order of the appellant's attorneys, and it is quite plain, jurisdiction is not dependent upon the form in which the clerk may have extended the Court's order. But apart from this, the case is not one to which the rules of practice and doctrine of abatement governing actions *inter partes* under the general jurisdiction of the Court can be applied.    It is a case where special jurisdiction is conferred by an Act of the Legislature and if the proceedings are in conformity with the Act it is all that is required. Now the provisions of the statute in this respect are simply that the inquisition taken under the magistrate's warrant shall be returned by the sheriff to the clerk of his county, and by him "*filed in his Court*, and shall be confirmed by said Court *at its next session*, if no sufficient cause to the contrary be shown ; and when confirmed shall be recorded by said clerk at the expense of the company, but if *set aside*, the said Court *may direct* another inquisition to be taken in the manner above prescribed."    No time is here limited within which the power to direct another inquisition may be exercised, and, looking to the object and pur-

poses to be attained and accomplished by such inquisitions, we are clearly of opinion the power continues and remains in the Circuit Court until the company seeking the condemnation may choose to call for its exercise. It may be exerted at the term at which the first inquisition is set aside or at any subsequent term so long as the power to condemn under the company's charter exists. It is the usual practice, and a very proper one for the purpose of facilitating the regular and orderly dispatch of their business, for Courts to have these cases entered upon their dockets, and docket entries of continuances and other proceedings made therein as in other cases, but the power here in question is in no wise dependent upon such entries. This construction of the statute is a conclusive answer to all the argument based upon the absence of such entries, the non-continuance of the case, and want of power in the Court to order *mero motu* the continuances to be entered. But though this answer is thus conclusive, it is not out of place here to remark that the delay in pressing for a new inquisition in this case is satisfactorily explained in the appellee's petition of the 27th of February, 1873. It has been said, this petition failed to disclose the fact that the appellee, when it took its appeal, gave an appeal bond which removed the injunction as an obstacle to the immediate obtention of the new inquisition. But conceding this to have been the case, it was, nevertheless, eminently proper both for the appellee and Court to delay action and the expense of another inquisition until the important question of the right to condemn, raised by the appellant's bill was finally settled.

2nd. It is next objected that the appellant had no notice of the application for a new inquisition and no opportunity to be heard against the petition and motion for it, and it is contended that without such notice the order directing it was passed without lawful authority. Here again the statute furnishes a complete answer to the objection. It

does not require any notice to be given to the land-owner, either of the original application to the magistrate, or of that to the Court for a new inquisition when the first has been set aside. However important notice in such cases may be, it is sufficient for the question we are now considering, that the law-makers have not made it a prerequisite to the validity of the proceedings. It is probable the Legislature thought the construction of such works of public interest ought not to be delayed by the necessity of giving notice to parties not *sui juris*, and non-residents of the county where the lands to be condemned were situated, and that the requirement of a previous attempt to purchase from resident owners *sui juris*, and failure to agree was sufficient notice to them that the company would proceed to have their lands condemned. But we need not speculate as to what was the motive of the Legislature in omitting the requirement of notice in such cases; they have passed a law which confers jurisdiction upon the Courts to pass orders like this without notice.

3rd. Another objection is that the Court had no power to amend and make valid the warrant which the clerk issued under its order; and that this warrant was void when issued for want of a *teste*, and is in other respects defective and insufficient. This assumes not only that the warrant was a writ, or one of the regular processes of the Court, but that it was essential to the validity of the inquisition which the Court was empowered to direct. But this is by no means the case. Such a warrant is not one of the regular writs known under the head of process and might have been dispensed with altogether. According to our construction of the statute, the power of the Court to "direct another inquisition to be taken" after the first has been set aside, may be carried out by an order much less formal than that adopted in this case, addressed directly to the sheriff, commanding him to proceed and take a new inquisition. It was certainly more regular and

formal to direct a warrant to be issued by the clerk, and if
it be issued under his hand and the seal of the Court, no
possible objection could be taken to that mode of procedure.
But certain it is that no defects in the warrant or in the
proceedings under it like those relied on here, can affect
the question of jurisdiction now under consideration.

This disposes of all the points of objection and argu-
ment we deem it important to notice, and finding that
the Circuit Court has, in these proceedings, in no respect
exceeded its jurisdiction, the motion to dismiss this appeal
must prevail.

*Appeal dismissed.*

