# ANTON TEXTOR ET AL. *vs.* THE BALTIMORE & OHIO RAILROAD COMPANY.

*Eminent Domain—Irregularity in Return of Inquisition by Sheriff— Appeal.*

No appeal lies to this Court from the action of the trial Court in confirming or rejecting the proceedings under an inquisition to condemn land for a public use, since no right of appeal is given by a statute. As to the questions of law and fact, which the lower Court in such cases has the power and jurisdiction to decide, its decision, whether right or wrong, is final. It is only when the lower Court exceeds its jurisdiction that this Court is authorized to review the proceeding.

The condemnation of land for its use by the Baltimore & Ohio Railroad Co., is regulated by the charter of that company, which provides for an application to a Justice of the Peace, who is required to issue his warrant to the Sheriff directing him to empanel a jury, take the inquisition and return it to the Clerk of Court. The Court is authorized to confirm or set aside the inquisition, and if set aside, "may direct another inquisition to be taken in the manner above prescribed." In this case, an inquisition for the condemnation of appellant's land was set aside by the Court to which it was returned, and that Court passed an order directing a new inquisition to be taken, and that the Sheriff summon a jury and return the inquisition to the Clerk of the Court. The railroad company then made a new application to a Justice of the Peace who issued another warrant to the Sheriff, directing him to summon a jury, and proceed in the same manner as the order of Court had directed. The return to the inquisition certified that the Sheriff had summoned a jury and proceeded "in obedience to the foregoing warrant." Upon appeal for an order overruling exceptions and confirming the inquisition, *held*, that upon the return of the first inquisition, the Court acquired jurisdiction and retained it when the order was passed directing another inquisition to be taken and returned to the Clerk; that it was not then necessary for the railroad company to make a new application to a Justice of the Peace and obtain from him a new warrant; that the Sheriff's return, referring to the warrant of the Justice of the Peace as the authority under which the inquisition was taken instead of to the order of Court was a mere irregularity, which the Court could have directed to be amended; that since the return of the Sheriff shows that he proceeded in the manner directed by the order of the Court, its jurisdiction was not ousted by this error in the return, and that since the Court had the right to decide whether the inquisition was taken in reality under the warrant of the Justice of the Peace or under the order of Court, no appeal lies from its action in the premises.

· *Decided January 7th, 1908.*

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and BURKE, JJ.

*Thomas G. Hayes,* for the appellants.

*Duncan K. Brent* (with whom was *W. Irvine Cross* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee instituted proceedings to condemn certain properties of the appellant, Anton Textor, in the city of Baltimore, which were stated in the applications to be wanted and necessary for the construction of its railroad yard. There were two cases, as the proceedings included different lots of ground, but the same questions being involved they were argued together and will be disposed of in one opinion. We will only refer to the record in the first case on the docket, as the facts in the other case are similar, so far as they affect the questions before us.

In May, 1906, an inquisition, which had been taken and returned to the Superior Court of Baltimore City, was set aside by an order of that Court, which directed that "a new inquisition be taken in the manner prescribed by the Acts of the General Assembly of Maryland of 1826, ch. 123, and that the Sheriff summon a jury of twenty inhabitants of the said city of Baltimore above the age of twenty-one years, and qualified to act as jurors under the laws of this State, not related nor in anywise interested, to meet on the land described in the original application and warrant there:o attached on the 29th day of May, 1906." The order then went on to direct the Sheriff how to act in case any of those summoned did not attend, as to striking the list, administering the oath, the execution of the inquisition and the return of it to the Clerk of that Court.

The Act of 1826 referred to is the charter of the appellee.
The Sheriff gave notice to the appellants of the proceeding,
the railroad company made application to Wilmer Emory, a
Justice of the Peace, to issue his warrant to the Sheriff, direct-
ing him to summon a jury, etc., and the Justice issued his
warrant requiring the Sheriff to proceed just as the order of
the Court directed—using substantially the language of that
order.

The inquisition recites that it was taken "on the applica-
tion of the Baltimore and Ohio Railroad Company to Wilmer
Emory, Justice of the Peace," &c., and the return of the Sher-
iff certified that "in obedience to the foregoing warrant" he sum-
moned the jurors, &c.   The appellants filed a number of
exceptions to the confirmation of the inquisition, which were
overruled, and they appealed from the order confirming the
inquisition.   They base their right of appeal upon the alleged,
want of jurisdiction in the lower Court to confirm the inquisi-
tion, because the Sherriff proceeded under the warrant from
the Justice of the Peace, and not under the order of Court, as
shown by the inquisition and return, and that hence, as stated
in their brief, the "Sheriff's whole proceedings (were) null
and void, and lower Court (was) without power and jurisdic-
tion to validate said proceedings by confirming said inquisi-
tion."   The appellee filed a motion to dismiss the appeal on
the ground that this Court is without jurisdiction to entertain
it.

Inasmnch as no appeal to this Court is given by the char-
ter of the appellee, or by any Public General Law, from such
condemnation proceedings, the learned counsel for the appel-
lants concedes that if the lower Court had jurisdiction to pass
the order cofirming the inquisition, no appeal lies to this Court
from such order.   That rule has been announced so fre-
quently that it is useless to cite authorities to sustain it, but
there have been many cases before this Court wherein it has
been called upon to determine whether the lower Courts had
exceeded their jurisdiction, by reason of the particular facts
and circumstances involved in them.   The principle, which had

often been previously announced, was thus clearly stated by
CHIEF JUDGE MCSHERRY in *New York Mining Co.* v. *Midland
Co.*, 99 Md. 512: "Whatever subject matter in the contro-
versy, the Court below had the right to decide was necessar-
ily a subject-manner within the jurisdiction of that tribunal.
Accordingly the inquiry here is, not whether the trial Court
rightly decided but whether it had the right to decide, what
it did decide.   If it had the right to decide what it did decide
then, though its decision be, in point of fact or of law, erron-
eous it cannot be reviewed, because the statute has conferred
no power upon this Court to sit in review of such a judgment.
So the ultimate question is, were the things complained of and
decided below, things which the Court had jurisdiction to
decide?"

If we apply that rule to the facts of this case, can there be
any doubt that the Superior Court had the *right to decide*
whether the Justice of the Peace had the authority to issue
the warrant, whether the Sheriff had jurisdiction to act under
it, and whether the inquisition was in reality taken under it, or
under the order of the Court?   All of those questions, together
with others, were raised by the exceptions of the appellants,
which the Superior Court was called upon to pass on.   Of
course, we must bear in mind that the Court must have *the
right to decide* the question—and that if it has no jurisdiction
to do so, an appeal will lie from its decision.   For example,
if the Sheriff had had no warrant before the first inquisition
was taken, there would have been no legal foundation for the
condemnation proceedings, because he was not authorized to
act without a warrant, or if he had *then* acted under a warrant
from some one other than a Justice of the Peace, it might be
conceded that all subsequent proceedings under it would have
been without authority, but such instances are altogether dif-
ferent from what we have before us.   There is no suggestion
that the original warrant was not properly issued, and it is
not even in the record, which begins with the order of Court
setting aside the inquisition taken under that warrant.   The
charter of the appellee provides for an application to a Justice

of the Peace, who is required to issue his warrant to the Sheriff, directing him to summon and empanel the jury, take the inquisition and return it to the clerk of the Court. All of those things were apparently done, and the Court by the appellee's charter is directed to confirm the inquisition at its next session, if no sufficient cause to the contrary be shown, "but if set aside, the said Court may direct another inquisition to be taken *in the manner above prescribed.*" The Court did therefore, have jurisdiction originally, after the inquisition was returned to it, and it did retain jurisdiction directing another inquisition to be taken and returned to its clerk. In passing we might say that the General Coporation Laws, applicable to railroad companies, are substantially the same in reference to condemnation proceedings as the provisions in the appellee's charter—such differences as do exist not being involved in this case and hence unnecessary to discuss. The record does not contain any bill of exceptions or state the facts very fully, but the exceptions filed by the appellants to the inquisition state that the order of the Court was delivered to the Sheriff, and it is marked filed as of the same date the return of the Sheriff, the inquisition, &c., were.

Under such circumstances can it be doubted that the Superior Court had jurisdiction to confirm or reject this inquisition? It had by its order directed the Sheriff to do what he did do—summon and empanel the jury, have the inquisition executed as therein directed and return it to the Clerk of that Court. It unquestionably had the power to do all that it did do by that order, and when the inquisition was returned and filed with the Clerk, it certainly had jurisdiction to confirm or set it aside, unless the mistake of the Sheriff, in referring to his authority, ousted its jurisdiction, which was by the statute expressly conferred on it. If it had set it aside upon the grounds relied on by the appellants—by reason of the application to and the issuance of the warrant by the Justice, and the reference to them in the return and inquisition—it would not have been because the Court did not have jurisdiction of the subject-matter, but because of mere irregularities in

the proceedings. The mode of proceeding, as prescribed by the statute, included an application, a warrant, the summoning and selection of a jury, the inquisition and the return of it to Court. The appellee after the passage of the order of the Court, which directed that "a new inquisition be taken in the manner prescribed" by the Act of 1826, started further back "in the manner prescribed" than was necessary, but the Sheriff followed the order in all respects, and because more was done than was required surely could not affect the jurisdiction of the Court already acquired. If the Court had been satisfied that the appellants were prejudiced, or in a material way injured, by the application to the Justice and the issuance of the warrant, it ought to and doubtless would have set aside the inquisition, but if it had erred in that respect, its action could not have been the subject of appeal, because it had the *right to decide* that very question.

By the decision in *George's Creek C. & I. Co.* v. *New Cen. Coal Co.,* 40 Md. 425, it is clear that it was not necessary to make a new application to the Justice or obtain a new warrant from him. The New Central Coal Company was invested with the same power of condemnation as that granted to this appellee by the 15th section of its charter, and the proceedings in that case were conducted under those provisions. The first inquisition was set aside, and the Court passed an order directing a warrant for another inquisition to be issued. The Clerk issued a warrant which was not "tested in the name of the Chief Judge," and was irregular in some other respects. After the inquisition had been returned, exceptions had been filed to it and a motion made that it be quashed and set aside, the Circuit Court directed that the warrant be amended "by testing the same in the name of the Chief Justice in the usual way— that is, as of the first day of the January Term, 1873." It was urged that the Court had no power to amend and make valid the warrant, and that it was void when issued for want of a *teste* and was in other respects defective and insufficient, but this Court said: "Such a warrant is not one of the regular writs known under the head of process *and might have been*

*dispensed with altogether."* According to our construction of the statute, the power of the Court to "direct another inquisition to be taken," after the first has been set aside, may be carried out by an order much less formal than that adopted in this case, addressed directly to the Sheriff, commanding him to proceed and take a new inquisition. It was certainly more regular and formal to direct a warrant to be issued by the Clerk, and if it be issued under his hand and the seal of the Court, no possible objection could be taken to that mode of procedure. But certain it is that no defects in the warrant or in the proceedings under it like those relied on here, can affect the question of jurisdiction now under consideration."

When, then, the return of the the Sheriff shows that he did everything that the order of the Court directed him to do, and that the warrant of the Justice of the Peace corresponded in all respects with the order of the Court, it would seem to be clear that the *jurisdiction* of the Court was not ousted because the Sheriff's return and the inquisition erroneously referred to the warrant and application. They were at most irregularities, and if they be conceded to be such as might have injuriously affected the appellant (although it is difficult to imagine how that could be), the Superior Court had, in our judgment power and jurisdiction to determine that and all similar questions, and hence we have no power to review its action. The Sheriff returned with the other papers the order of the Court, and it would have been proper and more regular to have referred to that order in his return, but his failure to do so cannot affect the jurisdiction of the Court. It would indeed be a peculiar position for a Court of record to assume, if it held that, although the Sheriff had done all that it had directed he should do, and in the manner he was directed, it was required to have it done over again, merely because something was done that was not necessary and the Sheriff, by mistake or inadvertence, did not refer to the order of Court as his authority to act.

The Sheriff had both the warrant and the order, and if the Court below had deemed it necessary, it could undoubtedly have authorized the Sheriff to amend his return so as to refer

to the order of the Court, for if the amendments referred to in 40 Md., *supra*, could be made, there could be no reason why a Sheriff could not amend his return to conform to the facts in such a case as this.    He may have supposed that his authority came through the warrant of the Justice, but if under the law it was vested in him by the order of Court, he could have so amended his return, as he had both.    If then the Court had the power to allow such amendment, as it undoubtedly had under the facts of this case, there would seem to be no room to question the jurisdiction of the Superior Court on the ground that the Sheriff in his return referred to the warrant and that the inquisition referred to the application.    Proceedings to exercise the power of eminent domain should be so construed as to give owners of properties sought to be condemned every protection that is necessary and proper, but this Court has no more right to assume jurisdiction that is not given it than any other Court has.

In the case of *Cumberland Valley R. R. Co.* v. *Martin*, 100 Md. 165, so much relied on by the appellants, there was an *appeal* to the Circuit Court from the County Commissioners, and of course the jurisdiction of the Circuit Court depended upon that of the County Commissioners.    If the County Commissioners deemed it expedient to appoint examiners, the statute said "they shall appoint three persons as examiners, who shall be freeholders in the county, and not interested in or holding lands through which the road is proposed to be opened, altered or closed," but there was nothing in the proceedings in that case to show that such examiners as the Commissioners were authorized to appoint had been appointed. We therefore held that as this "essential fact necessary to the exercise of the jurisdiction" did not appear in the proceedings to exist, the lower Court had no jurisdiction to enter the judgment on an appeal from the County Commissioners, as they had no jurisdiction.    But that case is wholly different from this, because the Superior Court had express authority to direct the Sheriff to do what he did do, and did so direct him, and then acted on the inquisition which had been taken in

exact conformity with the terms of its order, as shown on the face of the proceedings.   So, although we do not want to be understood as holding that a Court of record such as the Superior Court should be held to the same strict requirements that County Commissioners are, if we did so hold, this case would be easily distinguishable from Martin's case.   The cases of *N. Y. Mining Co.* v. *Midland Co.,-supra*; *Hopkins* v. *P. W. & B. R. Co.*, 94 Md. 257, and *Moores* v. *Bel-Air Water and Light Co.*, 79 Md. 391, and those cited in them, furnish so many illustrations of the powers of the Courts in condemnation proceedings that we do not deem it necessary to prolong this opinion by further reference to authorities or additional reasons for our conclusion, but we are of the opinion that the appeals must be dismissed in both cases.

> *Appeals dismissed in No. 52 (office docket) and No. 53 (office docket) the appellants to pay the costs in each case.*