(Decided 20th June, 1894.)

---

JOHN MOORES *vs.* THE BEL-AIR WATER AND LIGHT COMPANY OF HARFORD COUNTY. SAME *vs.* SAME.

*Proceedings to Condemn Water rights—Time within which to Apply for Writ of Error—Appeal from Order of Circuit Court in Condemnation proceedings.*

The two months within which application must be made for a writ of error in condemnation proceedings, begins to run from the date of the order finally confirming the award of the jury, and not from the date of the order overruling some objections thereto.

No appeal will lie to the Court of Appeals from the final order of the Circuit Court confirming the award of the jury in proceedings to condemn certain water rights, as the Legislature, by sections 248-253 of Article 23 of the Code, conferred a special jurisdiction on the Circuit Court over such proceedings, and did not expressly give the right of appeal from its judgment.

The fact that a corporation formed for the purpose of supplying a city with pure water, diverted the water of a certain spring from its accustomed channel prior to the institution of proceedings to have the interest of the owner of such water right condemned, does not deprive the corporation of the right to condemn.

APPEAL, AND APPEAL AS UPON WRIT OF ERROR, from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, MCSHERRY, BOYD and BRISCOE, J.

*John S. Young,* and *George Y. Maynadier,* for the appellant.

*William H. Harlan,* and *George L. Van Bibber,* for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee is a corporation formed under the Public General Laws of Maryland for the purpose of supplying the town of Bel-Air and vicinity with pure water. The proceedings show that it is the owner of a parcel of land upon which is a spring forming one of the sources of Bynum's Run, that the appellant is the owner of a mill-seat on said run, and that he claimed the flow of water from said spring is appurtenant to said mill.

Being unable to agree with the owner, and desiring to acquire, in perpetuity, the right to divert from its accustomed channel and flow, through the conduits to the town of Bel-Air, so much of the water of the aforesaid spring as may be necessary and proper for the purpose of supplying pure water, the company applied to one of the Judges of the Circuit Court for Harford county, where the property is, for a warrant to the sheriff for the purpose of condemning the interest of appellant in the water rights. The Judge issued the warrant, the sheriff summoned the jury, and the inquisition was returned to the Court in accordance with the practice provided for by secs. 248-253 of Art. 23 of the Code. These proceedings took place in the fall of 1892. Objections were filed to the ratification of the inquisition, which were overruled, and the award was confirmed.

The case was brought to this Court by an appeal and also by a petition in the nature of a writ of error.

The appellee has made a motion to dismiss the appeal because the action of the Circuit Court was final, and from its order of confirmation no appeal lies, and to dismiss the writ of error because there was no application therefor within two months of the passage of the order by the Circuit Court finally determining all the questions raised by appellant in his application for said writ.

So far as the latter is concerned the record shows that, although the Court overruled on March 20th, 1893, the objections filed to the jurisdiction of the Court, the award of the jury was not finally confirmed until the 31st of January, 1894. Until the final order was passed there could be no application for the writ of error. Only part of the objections had been passed on by the Court. The application was therefore in time, and it cannot be dismissed on that ground.

As the motion to dismiss the appeal involves a consideration of the questions urged by appellant, it will be unnecessary to pass upon it separately.

The statute under which these proceedings were conducted gives no right of appeal or writ of error to this Court. The appellant bases his right of appeal, however, on the theory that the Court below had no jurisdiction to confirm the award for the reasons assigned by him, and that therefore this Court has the right to review the rulings of that Court on what he contends to be jurisdictional questions.

Sec. 33 of Art. 23 of the Code authorizes the formation of companies under the general corporation laws "for the purpose of supplying any city or town in the State with pure water." Sec. 246 of the same Article provides that such companies "shall have power to acquire, possess and use all such land, *water rights* and other property, and shall have all such power as may be necessary for the pur-

poses for which said corporation is formed," etc. Sec. 247 provides that if any such corporation cannot agree with the owners of any land or water rights, which it may have power to acquire for the purpose of laying pipes or constructing its works, it may proceed to condemn and acquire the same in the manner provided for in sections 248 to 253 of that Article.

The sections last referred to direct how condemnation proceedings of such companies as they are applicable to shall be conducted. Application is made under section 248 to a Judge of the Circuit Court of the county where the property to be condemned is, and if it is made to appear satisfactorily to him that the land or materials (or water rights under sec. 247) are necessary and proper to be condemned for the use of the company, he is required to issue his warrant to the sheriff, who is commanded to summon a jury. Sections 249 and 250 provide for empanelling the jury, and section 251 requires the jury to sign and seal an inquisition which shall be returned to the clerk of the Circuit Court by the sheriff, " and if no sufficient cause to the contrary be shown, the said inquisition shall thereupon be confirmed by the said Court, at such times and after such notice as shall be fixed by its rules."

An examination of the sections of the Code above referred to will conclusively show that the Legislature has conferred a special jurisdiction on the Circuit Court to review, confirm, or set aside inquisitions returned under condemnation proceedings authorized by those provisions of the Code, and do not expressly give the right of appeal from its judgment. As early as 1837 it was decided by this Court, in *Wilmington and Susquehanna Railroad Co. vs. Condon,* 8 *Gill & J.,* 443, that no appeal would lie in such cases. That case has been approved in numerous decisions in this Court, many of which are referred to in a note of Brantly's Edition of the early Maryland Reports, and need not be cited here, as the law is too well settled to

be questioned. But, of course, the cases all proceed upon the assumption that the Circuit Court has not exceeded its jurisdiction thus conferred on it, and, as already stated, the appellant bases his right of appeal on the want of jurisdiction of that Court.

It seems clear to us that most of the objections urged in argument could unquestionably only affect the regularity of the proceedings and do not involve the question of jurisdiction.

As is said in *George's Creek Coal and Iron Company vs. New Central Coal Company,* 40 *Md.,* 435 : " Our inquiry must be confined to the question whether the Circuit Court by these proceedings, has in any respect exceeded the power and jurisdiction conferred upon it by the statute under which it acted."

If the Court below had the *power and jurisdiction* to confirm the inquisition by which the water rights of appellant in Bynum's Run were undertaken to be condemned, its action cannot be reviewed in this Court. In *Rayner vs. State,* 52 *Md.,* 368, it was urged that this Court could review on writ of error the action of the Circuit Court on an appeal from the justice of the peace because the statutes under which Rayner was tried were unconstitutional and void. But it was decided that, as the judgment of the Circuit Court was rendered within the limits of the special jurisdiction conferred on it, it was not only binding, but final, and this Court could not review it. In other words, as the Circuit Court had conferred on it appellate jurisdiction to hear cases under those statutes, without the right of appeal being given to this Court, its decision on the constitutionality of the statute was final.

In *Balto. & Havre de Grace Turnpike Company vs. Northern Central Railroad Company,* 15 *Md.,* 198, the appellant claimed that appellee had no authority under its charter to condemn *a franchise,* and that the justice (who was the authorized officer under that charter) had no juris-

diction to issue the warrant to the sheriff. This Court said that "the charter of the appellee provides for the confirmation of inquisitions by the County Courts, if no sufficient cause be shown to the contrary. The words employed, as we think, embrace the questions suggested and argued in this cause, including, as well, the right of the appellee to condemn the franchises of the appellant, for no better cause can be assigned against the confirmation than want of power to condemn the particular property proposed to be taken. We could not review a judgment confirming the inquisition without interfering with the exclusive jurisdiction of that Court."

In *Cumb. and Penn. R. R. Co. et al. vs. Penn. R. R. Co. in Maryland*, 57 *Md.*, 275, the Court, said: "And, as showing that the question of the power to condemn the particular property in controversy was exclusively a question for the confirming tribunal, the case in 15 Md., 198, is directly in point."

In that case Judge MILLER filed a dissenting opinion, and in referring to the case in 15 Md., after quoting the above, said: "If, by this, the Court meant to say they had no *appellate* jurisdiction over such a judgment, it would be consistent with all the authorities,"—but contended that a Court of equity had power to interfere with a ratified inquisition.

In *Brown vs. Phila., Wilm. and Balto. R. R. Co.*, 58 *Md.*, 539, it was alleged that the railroad company had exhausted its power to condemn land for the purposes named, and that its attempted exercise of that power was simply null and void. Yet the Court decided that the judgment of the Circuit Court in ratifying the inquisition of condemnation was final and conclusive, and could not be questioned by any person who was a party to the proceeding; that the Circuit Court was the tribunal authorized to hear and determine the subject-matter of controversy, and no review could be had of its judgment either in a direct proceeding or a Court of equity.

The cases in this State are so numerous that it would be useless to occupy more space in quoting from them. We will, however, refer to *Rundle vs. Mayor, etc., of Baltimore,* 28 *Md.,* 356; *Western Maryland Railroad Co. vs. Patterson,* 37 *Md.,* 135 ; and *Greenland vs. County Commissioners of Harford County,* 68 *Md.,* 59.

In this case there can be no controversy about the right of the company to exercise the right of eminent domain, as its charter expressly authorizes it. Can there be any doubt about the Circuit Court having jurisdiction over the condemnation proceedings—over the subject-matter? Clearly not.

The company having the authority to condemn, and the Circuit Court having exclusive and final jurisdiction over the subject-matter, we have no hesitation in determining that we have no jurisdiction to review any of the questions presented by the record. The judgment of the Court below is as conclusive as to all the alleged errors in these proceedings as the judgment of this or any other Court of final determination would be in matters it had exclusive control over.

If we were authorized to review the proceedings as presented by the record, we would affirm the rulings of the Court below, which have been brought to our attention. The statute expressly authorizes the condemnation of *water rights* by a company such as the appellee. Without such authority it would be in the power of one man to prevent a city or town from securing pure water. The objection urged by appellant that the jury did not fix and ascertain the quantity of water necessary and proper for the use of appellee is not a valid one. The company could only take so much of the water as was necessary and proper for its purposes. The time of year and the character of the season, whether wet or dry, must necessarily affect the quantity of water proper to be taken from this spring, and diverted from its regular channel. If the jury

had limited the number of gallons to be taken per minute, in dry seasons it might not have been as much as was necessary, and in wet seasons it might have been more than sufficient if the company also controlled other springs or streams. Evidence could have been, and probably was, offered to the jury which viewed the property to enable the jurors to determine the injury that appellant would sustain. All evidence pertinent to this question, that is admissible under the law, could have been and we must assume was offered. If it was improperly excluded from the jury the Circuit Court could alone correct the error, as that would unquestionably not be a subject of review by this Court.

We have been referred to no authority which we think sustains the position of appellant, that because the appellee had diverted the water prior to the institution of the condemnation proceedings it had no right to condemn. If that be correct, a railroad company which had taken possession of land under a deed from one supposed to be the owner, but who was afterwards determined not to be, could not condemn the interest of the real owner. But such is not the law, as shown by *Brown's case, supra.* There the railroad company purchased of Tome. Brown subsequently instituted actions of ejectment, and recovered judgment for the property. The company then condemned it, and this Court not only recognized the condemnation proceedings as valid, but decided, as stated above, that the judgment of the lower Court was final. It may be true that this particular point was not raised in that case, but the opinion of the Court shows that the facts were before it. See also *Baltimore and Hanover Railroad Co. vs. Algire,* 65 *Md.,* 337. If the appellee wrongfully diverted the water from its accustomed flow prior to the condemnation proceedings, the appellant had his remedy; but that did not take away the right of the appellee to condemn his water rights.

It was also claimed that the return of the sheriff is insufficient, in that it does not appear therein that the jurors summoned were not related to appellant, and not in any wise interested in the subject of condemnation, and not stockholders in the corporation.

The Judge, as required by sec. 248, commanded the sheriff to summon a jury of twenty inhabitants, "not related to said defendant, John Moores, nor in any wise interested in the land or water rights described in the application, * * * * nor stockholders" in the company; the application asked for such a jury; the inquisition referred to the application, and the sheriff returned that he had summoned "a jury of twenty inhabitants of Harford county, not related or in any wise interested"—naming them. The sheriff's return shows that John Moores was present, and struck off four jurors. He had the right to inquire into the fact as to whether any of the jurors were interested as stockholders, or in any other way; and if the sheriff had failed to perform his duty the Court below would doubtless have protected the appellant if he had been injured. But it was not even suggested in the objections to the ratification of the inquisition, or in the argument in this Court, that any of the jurors were disqualified.

Having already decided that we cannot review the action of the Circuit Court, it was perhaps unnecessary further to pass upon any of the questions, but we deemed it proper to express our views on them, as they were fully argued.

For the reasons stated, the appeal must be dismissed, and the writ of error quashed.

> *Appeal dismissed, and writ of error quashed, with costs to appellee.*

(Decided 20th June, 1894.)