# ALEXANDER Y. DOLFIELD *vs.* WESTERN MARYLAND RAILROAD COMPANY.

*Eminent Domain—Objection to Right of Railway Company Under Its Charter to Condemn Additional Land Must be Made in the Inquisition Proceedings and not by Bill for Injunction—Power of Western Md. R. Co. to Condemn Land for Addition to its Right of Way.*

The question whether a railway company has the right under its charter, to condemn certain land for an addition to its roadbed, is a matter exclusively within the jurisdiction of the Court to which the inquisition is returned, and which is authorized to confirm or reject the same.

Consequently if a party whose land has been condemned for the use of a railway company neglects to except to the ratification of the inquisition of condemnation in the Court to which it is returned, or to appeal from an order of that Court determining that the company has the power of condemnation, he cannot afterwards rely upon this lack of power as a ground for an injunction to restrain the railway company from taking possession of the land condemned.

The Western Maryland Railroad Company was authorized by its charter to condemn land, not exceeding 66 feet in width, for its right of way. By an amendment, the company was authorized to use any land necessary or convenient for the site of the road, or for warehouses or other work necessary and useful in the construction of the road. The company was also authorized to condemn land necessary in changing the location of any part of its road. By another amendment, the company was authorized to exercise the powers of condemnation prescribed by the general railroad incorporation law of the State. Under this general law, there is no limitation as to the width of the right of way that may be taken by a railway company, and such company has the power to change its location. The Western Maryland Railroad Company acquired by condemnation a right of way 66 feet wide through plaintiff's land and constructed its road thereon. Subsequently, the company instituted condemnation proceedings for the purpose of acquiring a part of plaintiff's land, one hundred and thirty-two feet wide contiguous to the aforesaid road bed. The inquisition in this proceeding was confirmed by the lower Court to which it was returned. Afterwards, the plaintiff filed the bill in this case alleging that when the company had taken the first parcel of land, 66 feet wide, its power to condemn was exhausted, and that it had no right to take more of plaintiff's land, either to change, or to add to, its right of way, and the bill asked that the company be enjoined from so doing. *Held,* upon demurrer, that the bill should be dismissed not only because the question of the power

of the company to make the condemnation should have been raised in the condemnation proceeding, but also because the company had the right under its charter and the general law to condemn the additional land.

*Decided March 6th, 1908.*

Appeal from the Circuit Court of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*T. Scott Offutt* (with whom was *John I. Yellott* on the brief), for the appellant.

*First.* The railroad company has not, under its charter or any amendment thereof, the authority to acquire by condemnation, for the purpose of building its railroad between its termini in Maryland, any strip of land exceeding sixty-six feet in width.

(*a*) That if by a "railroad not exceeding 66 feet" in width the Legislature meant a railroad 66 feet wide at the elevation of the ties and rails, then in order to warrant the condemnation of land wider than sixty-six feet, such additional land must be necessary for the construction of a railroad "not exceeding 66 feet in width," as thus defined.

(*b*) That the limitations of the width of appellee's railroad, as fixed in its charter and the several acts amendatory thereof, is an absolute one, and not to be extended or enlarged by implication, and that the true definition of "railroad," as the word is used in said charter and amendments, is a strip of land not exceeding sixty-six feet in width.

*Second.* That, having acquired a strip of land of the full width authorized by its charter, through appellant's land, the appellee had exhausted its power of condemnation, and could, therefore, condemn no portion of said lands in excess thereof.

*Third.* That the mere act of a Court in affirming an inquisition in a case in which it was without jurisdiction could not vest it with authority. That it could not, by its own act, acquire jurisdiction, where, without such act, it had done.

(*a*) That if the railroad company was without power under its charter as amended, to condemn the appellant's land, which was in excess of the 66 feet already held by it, then the whole proceedings in relation to such condemnation being to an extent and for a purpose not authorized by law is void; and that the act of the Court in affirming the inquisition is void, for the reason that it only has jurisdiction in cases where there is legislative authority for the condemation.

*Fourth.* That if such condemnation proceedings and the action of the Court thereon are void, and that the appellee, pretending to act under color of them, threatens to enter on the appellant's land, to dig it up, and otherwise to irreparably injure it, that such acts so threatened would be such an invasion of the appellant's rights that he is entitled to invoke the aid of a Court of equity to restrain them.

1. There are two canons of construction usually invoked to determine the real meaning of a statute authorizing the taking of private property under the power of eminent domain.   The first is, that primarily the power to take property at all is to be strictly pursued, as in derogation of common right, and the most arbitrary exercise of authority known to our institutions, and the second, is that when the right is granted and established that its actual exercise is not to be hampered by narrow, forced or unreasonable or merely technical objections, and its execution is to be regarded in a liberal spirit, designed to promote rather than retard the accomplishment of its purposes.

2. Here it is the right to condemn at all more than the 66 feet which is denied.   We contend that the company has no more right to take the 132 feet additional than it has to take a thousand feet or a mile of additional width.   That the company having been granted a right to condemn and acquire land for a railroad 66 feet wide, it has no more power to condemn more land, than it has to carry on a banking business; and that it has no more right to take this land when it is in excess of the amount its charter authorized it to acquire than it would have to condemn land for a lateral or

branch road without legislative authority.   3 *Elliott on Railroads*, 973; *Bron* v. *Rome, etc.*, 86 Ala. 206; *Johnson* v. *Chicago*, 58 Iowa, 537; 30 *Am. & E. Ry. cases*, 294; *Pittsburg Nat. Bank* v. *Schoenberger*, 111 Pa. St. 95; *Tudor* v. *Chicago*, 27 N. E. 915; *In re Stees*, 9 N. W. 879; *Cumberland, etc., Co.* v. *McLanahan*, 59 Pa. St. 828; *Robinson* v. *Pa. R. Co.*, 161 Pa. St. 561; *Johnson* v. *Chicago R. Co.*, 58 Iowa, 537; *Central R. Co.* v. *Hudson*, 46 N. J. 289.

3.  That a Court of special and limited jurisdiction cannot, by any act of its own acquire jurisdiction in cases where the statutory law upon which it depends has conferred none.   It is of course conceded that if the Court below had jurisdiction to confirm the inquisition referred to in this case, that any error in limine no matter how gross or injurious, committed by it, could not be reviewed here.   But it is also submitted, that the converse is equally true, and that if the Court had no jurisdiction in that case, that then its act in erroneously assuming it, could not change its actual status, and that its acts, done in the course of its conduct of proceedings in which it was entirely without jurisdiction may be reviewed here.

For if it acted when it had no jurisdiction its acts were utterly void and can be attacked collaterally, or in any case in which they are called in question.   *Cooper* v. *Reynolds*, 10 Wal. 308; *Pennoyer* v. *Neff*, 95 U. S. 733.

3a.  That the Court was without jurisdiction to confirm the inquisition.   The question of the Court's jurisdiction to confirm the award of the Sheriff's jury involves, necessarily, the right of the defendant to condemn the land referred to at all, for the Court's jurisdiction depended solely upon the right of said company to condemn the land described in its affidavit, whether the proceedings were had under the General Law or under the special provisions of its charter.   For, jurisdiction could not have been conferred either by consent of the parties, or by the action of the Court.   There must have been facts upon which such jurisdiction rested.

While under such statutes it has the right to examine and adjudicate all matters relating to the confirmation or rejection

of inquisition where the party seeking to condemn has the right to condemn, and its decision upon all such matters is final, yet it neither has nor can assume jurisdiction in cases where the condemning corporation is without authority to institute the proceedings.

Now the authority to institute the proceedings can only be conferred by the State through the Legislature in the exercise of its sovereign prerogative of eminent domain, and in the ·absence of such special specific authority to condemn lands, no person, real or artificial, can institute proceedings to condemn land for its use.   There is no machinery provided for doing such a thing known to our laws, nor any possible way in which it· can be done.

And therefore persons, real or artificial, in attempting to subject private property to public use, can only do to the extent defined by the Legislature, and in the manner prescribed, and for the purposes declared by it.   It cannot institute proceedings to condemn to any greater extent, or in any different manner, or for any other purpose, because tribunals having authority to entertain or pass upon such proceedings would be wanting, none having been created.

4. If the condemnation proceedings and the action of the Court thereon were void, then the appellee may be restrained by injunction from taking or injuring the appellant's property under cover of them.

The soundness of this contention is established by repeated decisions of this Court.   *Western Maryland, etc.,* v. *Owings*, 15 Md. 199.

Nor, do I understand that it is in any sense modified by that line of cases, in which this Court has refused to review the errors committed by the lower Courts in limine in cases in which such Courts had jurisdiction.   Such as the cases of *C. & P.* v. *Pa. R. R.*, 57 Md. 275; *Patterson case*, 37 Md. 125; *Brown's case*, 58 Md. 544; *Moores* v. *Belair, etc., Co.*, 79 Md. 391.   The theory running consistently through all of these cases is that this Court does have the power to review he action of the lower Court, when it has exceeded its juris-

diction, or has acted without any jurisdiction.    That this is a fair, reasonable, and it is respectfully submitted a necessary inference to be drawn from the language of the Court, will be demonstrated by a careful analysis of these cases.

*Leon E. Greenbaum,* (with whom was *George R. Gaither* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal is taken from a decree of the Circuit Court of Baltimore City sustaining a demurrer to the plaintiff's bill of complaint, and dismissing the bill.    The bill alleges that the plaintiff, Alexander Y. Dolfield, is the owner of a parcel of land now within the limits of Baltimore City and along the line of the Western Maryland Railroad Company, which will be designated herein as the Railroad Company.    That said Railroad Company is a corporation under certain special acts of the General Assembly of Maryland with authority to construct, repair and operate a railroad between certain points in said State, and with authority for said purposes, to acquire by purchase or condemnation such lands as might be required for its railroad tracks, buildings, stations, etc.; the width of said railroad between its terminals and through the plaintiff's land aforesaid, being expressly limited by its charter, and the amendments thereof to a distance not exceeding sixty-six feet.

That the Railroad Company had long before the institution of this suit, acquired by condemnation a right of way sixty-six feet wide through the plaintiff's lands, upon which said railroad has been constructed and is now operated, and that thereby the said Railroad Company completely exhausted all the powers granted to it for the acquisition of any other part or parcel of the plaintiff's said lands.    That nevertheless, on October 11th, 1905, the defendant for the purpose of constructing its railroad of a greater width than sixty-six feet, instituted condemnation proceedings for the purpose of acquiring thereby an additional strip of the plaintiff's land one hundred and thirty-two feet wide, contiguous to the sixty-six feet

now occupied by said railroad, and that said additional strip was not necessary for the construction of its said railroad not exceeding sixty-six feet in width.

That in pursuance of said attempted condemnation the usual proceedings were had and were returned to the Superior Court of Baltimore City where the plaintiff excepted to, and protested against, the ratification of the inquisition and return made in said proceedings, and to the entry of any judgment thereon, but that said Court overruled said exceptions, and attempted to ratify said inquisition, as appeared by a certified copy of said proceedings filed as a part of the bill. That the defendant had no power or authority to condemn the lands so sought to be condemned, because the lands theretofore acquired were sufficient for the construction of its railroad not exceeding sixty-six feet in width, and because the lands sought to be condemned were neither necessary nor susceptible of being used for the mere purpose of building a railroad not exceeding sixty-six feet wide, and that therefore the pretended condemnation was null and void.

That the defendant nevertheless is about to enter upon said lands and to excavate the same and construct thereon both cuts and fills which will work an irreparable injury to the plaintiff.

That the Superior Court was without jurisdiction in the said condemnation proceedings which are in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, and of Article 23 of the Declaration of Rights in the Constitution of the State of Maryland.

The bill then prayed an injunction restraining the defendant from entering upon said lands; also that the condemnation proceedings and the judgment entered thereon be declared null and void, and for such other and further relief as the case should require.

To this bill the defendant demurred.

It appears from the certified copy of the condemnation proceedings that though the plaintiff entered an appeal on June 25th, 1906, from the order of the Superior Court ratifying

said inquisition; passed on April 27th, 1906, he never prose-
cuted any appeal or sent up any record to this Court, but filed
the present bill on January 31st, 1907.

Although this case was heard on demurrer to the bill, the
allegations of the bill as to the charter powers of the defend-
ant must be taken as if reciting the actual provisions of the
charter, and it is therefore necessary to ascertain precisely
what powers of condemnation were granted.

The defendant was incorporated by chapter 304 of the Acts
of 1852 under the name of the Baltimore, Carroll and Fred-
erick Railroad Company.   By sec. 14 of that Act, the said
corporation was "invested with all the rights and powers nec-
essary for the construction and repair of a railroad, either from
the city of Baltimore, or from some suitable point on the
Baltimore and Susquehanna Railroad, to be determined by
the president and directors. to the town of Westminister, and
thence westwardly to some point on the Monocacy river in
the direction of Hagerstown, not exceeding sixty-six feet
wide, with as many sets of tracks as the said president and
directors may deem necessary, and they may cause to be
made or contract with others for making said railroad, or any
part of it, and they, their agents, or those with whom they
may contract for making any part of the same, after the pur-
chase or *condemnation thereof*, in the manner hereinafter pre-
scribed, may enter upon and use and excavate *any* land which
may be wanted for the site of said road, or the erection of
warehouses or other works, necessary to said road, or for any
other purpose necessary or useful in the construction or re-
pairs of said road or its works, and may make and construct
all works *whatsoever* which may be necessary and expedient
in order to the proper completion of said road."

Section 15 provides for the condemnation "of *any* land,
earth, gravel, or stone which may be wanted for the con-
struction or repair of said road, or any of its works," when
they cannot agree with the owner or owners thereof; pre-
scribes the method of procedure, the return of the inquisition
to the Circuit Court of the county, and the confirmation

thereof by said Court, before said inquisition shall become effective, and provides no appeal from the action of said Court. By the Act of 1853, ch. 37, the name of the defendant was changed to "Western Maryland Railroad Company."

· Chapter 71 of 1872, was enacted to amend the Act incorporating the Western Maryland Company, and to give additional powers to said company. The language of this Act is in many parts identical with that of the original Act, but wherever there is a variance the rights of the defendant are enlarged. Where the Act of 1853 gave all the powers *necessary* to construction and repair of the railroad, the Act of 1872 gives all powers necessary or *convenient* for that purpose. The western terminus was changed to Williamsport or Cumberland, and power was given to construct a designated lateral railway, also sixty-six feet wide, with as many sets of tracks as may be deemed advisable, "together with all buildings, stations, tanks, switches and other works, accommodations and equipments necessary or convenient for the operation of said main and lateral railway," and the same power was given after condemnation, to enter upon, use, and excavate "any land required for the construction and repair of said railway, or the erection of warehouses or depots, switches, turn tables, workshops or other works necessary for the road or for any other purpose necessary or useful in the construction or repair of the road or its works."

The Act further provided that "whenever the said company shall find it necessary to change the location or grade of any part of its road, *whether heretofore made* or hereafter to be made, it shall be authorized to make such changes * * * and for such purpose shall have the same powers for the acquisition of land materials, and all other property, and to be exercised in the same manner as stated in the preceding section."

The contention of the appellant is that as the authority conferred upon the defendant is to construct a railroad "not exceeding 66 feet wide," that this is a limitation upon the defendant's power of condemnation, either in order to change

or add to its right of way, and that inasmuch as a right of way 66 feet in width has already been acquired, any further attempted exercise of the powers of condemnation would be *ultra virus* and void, and should be restrained by a Court of equity, and to sustain this position he cites a number of cases from other jurisdictions which he earnestly contends are conclusive for that purpose.

The precise question here raised is not shown to have been presented to, and certainly has not been decided by any case in this Court, but in view of the provisions of the charter of this defendant, and of the general principles established by previous decisions in this State, we do not think there can be any serious difficulty in this case.

In *Baltimore and Havre de Grace Turnpike Company* v. *Northern Central Ry. Co.*, 15 Md. 193, the Railway Co. was proceeding under its charter to condemn part of the turnpike for a crossing for the Railway Co. These proceedings, while pending, were brought before the Superior Court by a writ of *certiorari*, and the writ was quashed on the ground that if the Railway Co. had no power to condemn the property, such want of power could be shown as cause against the confirmation of the inquisition. The charter of that company provided for the confirmation of inquisitions by the County Courts if no sufficient cause were shown to the contrary, but gave no appeal from the judgment of the County Court. In affirming the order of the lower Court, this Court said, "The words employed, as we think, embrace the questions suggested and argued in this cause, including as well the right of the appellee to condemn the franchise of the appellant, for no better cause could be assigned against the confirmation than want of power to condemn the particular property proposed to be taken. *We could not revise a judgment confirming the inquisition without interfering with the exclusive jurisdiction of that Court."* It would perhaps not be going too far to say that we might rely upon this case alone as sufficient, for it is difficult to imagine any distinction in principle between an original lack of power to condemn the particular property in question, and

the exhaustion of a concededly original power by the exercise of the power.    But there are other cases which confirm the case just cited.

In *Cumberland* v. *Pa. R. R. Co.*, and *B. & O. R. R. Co.* v. *Pa. R. L. Co.*, 57 Md. 275, the case in 15 Md. *supra*, was cited "as showing that the question of the power to condemn the particular property in controversary was exclusively a question for the confirming tribunal." That was a case in which it was sought to restrain the Pa. R. R. Co. from proceeding with its work after condemnation of an easement of a crossing. The injunction was refused by the lower Court on the ground that the jurisdiction to determine the matters in controversy was in the Circuit Court sitting in review of the condemnation proceedings, and in affirming that decree, which was passed by JUDGE ALVEY, this Court said, "Not only were the alleged grounds of objection open to the complainant by way of objection to the confirmation of the inquisition; but the said company did actually go into the said Court, and made objections to the confirmation of the inquisition; and if it did not make all the objections, jurisdictional and otherwise, that could be made to the confirmation, it was its own fault, and it cannot complain if there was any omission; and if its objections did not receive due consideration by that Court, or were erroneously decided, it is still bound by the decision, and we can see no reason why it should have another trial of the same questions, by the same Court, sitting in another capacity, and having no more ample power and authority to decide the questions involved in the one capacity than in the other."

The late JUDGE MILLER dissented in that case in a strong opinion, in which he took the exact ground taken by the appellant in the case now before us, and repeated this dissent in a subsequent case involving a similar question, but the decision in 57 Md. has never been departed from nor shaken.

In *Brown* v. *P. W. & B. R. R. Co.*, 58 Md. 541, JUDGE ALVEY stated the case in these words: "The application for an injunction in this case is based upon the theory, that the power and right of the appellee to take land by condemnation

for the purpose of constructing or keeping in running condition its line of railroad from the eastern terminus of its bridge over the Susquehanna river to the town of Port Deposit has been exhausted; and that, without other legislative authority than it has, its attempted exercise of that power is simply null and void."

The road in that case was constructed under authority conferred by the Act of 1853, ch. 138, which authorized a road 66 feet in width, and gave the same general authority to enter upon any lands necessary for the construction and repair of said road, as is given to the defendant in this case, but it was also provided that the road so authorized should be completed and in good order for the running of cars within six months after the bridge was so far completed as to admit of the passage of cars, and it was contended that this was an implied limitation, *as to time*, upon the exercise of the right of condemnation granted; but this view was rejected by the Court which said, "The Act should receive a reasonable interpretation for the accomplishment of the objects in view. The making of the road was a condition imposed upon the appellee, and it is its duty to maintain it and keep it in good working order. To do this the company must have the necessary means within its power; and hence it was provided that whenever it should be necessary for the company to have, use or occupy, any lands, materials, etc., in order to the construction or repair of any part of its road or roads, it should be authorized to acquire the same by agreement or condemnation. The Act containing no express limitation or restriction as to time, upon the exercise of the power of acquiring the necessary land for the use and maintenance of the road, it would seem to be but a fair construction of it, that the power in this respect, is, and was intended to be, *commensurate with the necessities of the road*, and the duties imposed upon the company in constructing and keeping it in proper repair." The reasoning of the Court in the above quoted passage is plainly applicable to the present case. There is here no *express* limitation or restriction upon the width of the road which may be

acquired, and there is the same reason for supposing, in the absence of such express restriction, that the power in respect of quantity, as in respect of time, was intended to be commensurate with the necessities of the road and the duties imposed upon it for the benefit of the public. The Court proceeded in the case just mentioned to say further, "But on the present application a Court of equity has not, nor has this Court as a Court of Appeal, any right or power whatever to review the judgment of the Circuit Court in ratifying the inquisition of condemnation. That judgment was final, and cannot be questioned by any person who was a party to the proceeding, and who could have presented all the defenses which were open to him at the time. The Circuit Court was a competent tribunal, expressly made so by statute, to hear and determine the subject matter of controversy, and no appeal was given from its decision. * * * And the Court was fully clothed with power and exclusive jurisdiction to hear and determine all objections and defenses as between the parties to the proceeding; and when such determination was made *the whole matter was concluded.*" This means, if it means anything, that even though this Court in that case had been of the opinion that the power of condemnation had been exhausted by lapse of time, it would still have been powerless to review the judgment of the Circuit Court, and if powerless in such case, it is equally powerless in the present case. Notwithstanding the clear and emphatic language of that decision, determined efforts have been made in the later cases to induce the Court to reconsider its utterances, but these have only resulted in strengthening the principle announced, and affording new illustrations of its application. In *Hopkins* v. *P., W. & B. R. R.* 94 Md. 257, the case of *Brown* v. *P., W. B. R. R., supra*, was approved. In Hopkins case the Act authorized the construction of a road not exceeding 100 feet in width. The original condemnation took 70 feet in width, and the subsequent proceeding was to acquire thirty feet in addition, so that, the same precise question presented here was not presented there. But in that case,

the Court used the following significant language. "The only ground upon which the present appeal can be maintained is that the appellee had *no right at all* to make .the condemnation complained of, and for that reason the Circuit Court had exceeded its jurisdiction in confirming the inquisition. If such be the case the decisions support the right of appeal. *Georges Creek Coal & Iron Co.* v. *New Cent. Coal Co.*, 40 Md. 425; *B. & O.* v. *Waltemeyer*, 47 Md. 331; *Herzberg* v. *Adams*, 39 Md. 312." The cases thus referred to merely show and were merely intended to show, that an appeal lies where the lower Court had no jurisdiction over the *subject matter*, and therefore no right to render any judgment upon the merits. The language of JUDGE SCHMUCKER in Hopkins case, *supra*, was quoted and approved in *N. Y. Mining Co.* v. *Midland Co.*, 99 Md. 506. In that case JUDGE McSHERRY said, "Whatever subject matter involved in the controversy, the Court below had the right to decide, was necessarily a subject matter within the jurisdiction of that tribunal. Accordingly the inquiry here is, not whether the trial Court rightly decided, but whether it had the right to decide, what it did decide. If it had the right to decide what it did decide, then through its decision be, in point of fact or of law, erroneous, it cannot be reviewed, because the statute has conferred no power on this Court to sit in review of such a judgment. So the ultimate question is, were the things complained of and decided below, things which the Court had jurisdiction to decide ? "

JUDGE BOYD had previously expressed the same principle more concisely in *Moores* v. *Bel Air Water Co.*, 79 Md. 397, as follows: "In this case there can be no controversy about the right of the company to exercise the right of eminent domain, as the charter expressly authorizes it. Can there be any doubt about the Circuit Court having jurisdiction over the condemnation proceedings—over the subject matter? Clearly not. The company having the authority to condemn, and the Circuit Court having exclusive and final jurisdiction over the subject matter, we have no hesitation in determining that we have

no jurisdiction to review any of the questions presented by the record.''

The charter of the appellee authorizes it after purchase or condemnation in the manner prescribed to enter upon and occupy "any land which may be wanted for the *site of said road*, or the erection of warehouses or other works necessary to said road or for any other purpose necessary or useful in the construction or repair of said road," and the supplement of 1872 adds the test of *convenience to* that of *necessity*. The application for a jury of condemnation in this case alleges that the land sought to be acquired was "necessary for the purposes appropriate to the business of said railroad." The inquisition returned recited this language, thus making it a part of their finding, and the ratification of the inquisition confirmed the necessity.

In *N. Y. Mining Co.* v. *Midland Co.*, *supra*, p. 513, the Court said: "There could be no more conclusive reason for refusing to confirm the inquisition than the non-existence of a necessity for an acquisition of the land sought to be condemned. Whether such a necessity did in point of fact exist was obviously a question for the Court below to determine upon the objections filed before the inquisition could be confirmed. It did determine that question, and being a question within the scope of its jurisdiction, and no appeal from that determination being provided by law, the conclusion reached is necessarily final, and not open for review." That was a writ of error, but there being here no want of jurisdiction in the lower Court, there can be no review by bill in equity.

We have thought it proper to place this decision upon the grounds we have considered, in order as far as may be to avoid future doubt as to the views of the Court upon the principal questions argued, but the case might have been briefly disposed of upon another ground presented by the appellee.

Chapter 56 of the Acts of 1904 was enacted to enlarge the charter powers of the Western Maryland R. R. Co., and sec. 2 of that Act provided that in addition to the special powers of condemnation conferred upon said railroad by previous laws,

"it is hereby authorized, in all cases, whether arising under this Act or otherwise to have and exercise all the powers of condemnation, and to have and exercise the same in the manner and according to the method prescribed by the general railroad incorporation laws of this State as set out in Article 23 of the Code of Public General Laws of Maryland." Under this general law there is no limitation of the width of right of way or the quantity of ground that may be taken. This is left to the exercise of good faith by the company, and the sound discretion of the Court authorized to confirm the inquisition. But even without the Act of 1904, the appellee was authorized to acquire this land by condemnation.

Sec. 254 of Art. 23, in clear recognition of the sound and salutary views of Mr. Lewis in his work on Eminent Domain, vol. 1, sec. 259, quoted at length in *Hopkius* v. *P., W. B. R. R., supra,* provides that, "Whenever any railroad company heretofore incorporated, or which may hereafter be incorporated, shall find it necessary for the purpose of avoiding annoyance to public travel, or dangerous or difficult curves or grades, or for other reasonable causes, to change the location or grade of any portion of its road, whether heretofore made or hereafter to be made, such railroad shall be and is hereby authorized to make such changes of grade and location, not departing from the general route prescribed in the certificate of such company; and for the purpose of making such change in the location and grades of such road, such company shall have all the powers and privileges to enter upon and appropriate such lands   *   *   upon the same terms, and be subject to the same obligations, rules and regulations as are prescribed by law."

It cannot be reasonably presumed that the Legislature meant to discriminate in this remedial statute against railroads chartered by special Act and in favor of those chartered under the general incorporation law, and therefore the word *certificate* used in this section, must be regarded as used in the sense of *charter.*

For the reasons given the decree must be affirmed.

*Decree affirmed with costs to the appellee above and below.*