SARAH SUGAR et al. *v.* NORTH BALTIMORE
METHODIST PROTESTANT CHURCH.

BOARD OF ZONING APPEALS OF BALTIMORE *v.*
NORTH BALTIMORE METHODIST PROT-
ESTANT CHURCH.

[Nos. 8, 9, January Term, 1933.]

*Decided April 5th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, and PARKE, JJ .

*George Washington Williams,* with whom were *James H. Preston* and *Louis Goodman* on the brief, for Sarah Sugar and others, appellants.

*Ernest F. Fadum, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the Board of Zoning Appeals, appellants.

*James W. Chapman, Jr.,* and *Mason P. Morfit,* with whom were *William L. Marbury* and *Fendall Marbury* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

George W. Hennick was the owner of a lot of land in Baltimore City. The lot was improved by a residence, and the property was known as No. 1521 Mt. Royal Avenue. Sarah Sugar desired to convert the dwelling into a confectionery and delicatessen store, and, at the instance of the owner, applied in November, 1931, for a permit to make this transformation, but permission was refused because the premises were located in a residential use district from which delicatessen stores are excluded by the terms of Ordinance No. 1247 of Baltimore City, approved on March 30th, 1931, and usually called the Zoning Ordinance. An appeal was taken from this ruling to the board of zoning appeals by

Sarah Sugar, who had become the tenant of Charles Green-blatt and Rose Greenblatt, his wife, the purchasers *pendente lite* of the property. The specific change proposed to be made by the owners was to use the front room of the first floor as a storeroom, where the applicant would conduct a confectionery and delicatessen store, but the second and third stories of the house were to continue to be used as a dwelling.

The premises in question were about midway in the block between McMechen Street and Mosher Street, and adjoined a large public garage situated in the angle formed by Mt. Royal Avenue and McMechen Street. The southern bound-ary line of the lot occupied by the garage is the northern boundary line of the property upon which the delicatessen and confectionery shop was to be opened, and is, also, a part of the boundary line between the first commercial use district lying to the north of this line and the residential use district to the south of the line, as established under the Zoning Ordi-nance. The remaining buildings in that block, which are on Mt. Royal Avenue and within the residential use district, are dwellings, although in the home immediately to the south of the contemplated delicatessen shop the owner, with his daugh-ter, makes mayonnaise dressing and has his office, but stores the dressing in a warehouse in the rear of his lot, where he loads his product in the vehicles of his patrons. The frontage of the applicant's lot on Mt. Royal Avenue and of the three lots to the south is fourteen feet three inches, and the next six lots have every one a frontage of fifteen feet.

The buildings engineer, who, is the head of the bureau of buildings, is a ministerial officer, and was bound to disapprove the application to change the first floor of the dwelling to a store, for the reason that a delicatessen store could not be opened in a residential use district. Paragraph 31 of Ordi-nance. An appeal was, therefore, necessary to the board of zoning appeals, which possesses ampler and discretionary powers by virtue of these applicable provisions of the zoning ordinance:

"Par. 12. *Use District Special Exceptions.* The Board of Zoning Appeals may, in its discretion, in a

specific case, and as provided in paragraph 33, permit, where otherwise excluded or limited. * * *

"(c) Within one hundred feet of a boundary line between two use districts, any use permitted in that one of such use districts which has the lower classification, provided such one hundred foot measurement shall not extend across a street."

The applicant's petition was for a permit in a specific case, and the premises were within one hundred feet of the boundary line between a first commercial use district and a residential use district; and this distance, where so measured, did not extend across a street, and a confectionery and delicatessen store was a use permitted in the first commercial use district, which had a lower classification of permitted uses than the residential use district. So, the subject-matter was within the discretionary power of the board of zoning appeals, subject to these provisions:

"Par. 33. *Special Exceptions by Board of Zoning Appeals.* The Board of Zoning Appeals may after public notice and hearing, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of this ordinance in harmony with its general purpose and intent as follows:

"(a) Grant a permit wherever it is provided in this ordinance that the approval of the Board of Zoning Appeals is required.

"(b) Grant a permit when there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this ordinance."

As a result of the appeal to the board of zoning appeals, the usual notices were given, and a public hearing was had at which a number of protestants appeared. The board of zoning appeals decided to grant the permit and passed an order of December 9th, 1931, in which it is declared that:

"The Board of Zoning Appeals, after giving public notice, inspecting the premises, holding a public hear-

ing and considering all data submitted finds that the premises in question is situated in a residential use district; that next door to the premises in question and immediately adjacent thereto to the north is a large public garage; that the said garage is in a first commercial use district; that the boundary line between the first commercial use district and the residential use district is situated between the public garage and the proposed location of the store noted in this appeal, and for these reasons approves the application by authority of paragraph 12, subparagraph (c) of Ordinance No. 1247, approved March 30, 1931, known as the Zoning Ordinance."

The North Baltimore Methodist Protestant Church, a body corporate, and ninety-nine other objectors filed in the Baltimore City Court an appeal from this order of the board of zoning appeals, and all papers and proceedings were produced at the hearing on this appeal in order that the Baltimore City Court might decide whether the determination of the board of zoning appeals is arbitrary, unreasonable, unwarranted, and contrary to law; and would reverse the granting of the permit and grant the objectors whatever relief their case might require. The appeal thus taken was pursuant to the terms of paragraph 35 of the Zoning Ordinance, and was heard and determined on the record made before the board of zoning appeals. The Baltimore City Court reversed the order of the board of zoning appeals, and rescinded and annulled the permit issued to the applicant, and denied her application. From this judgment, the tenant and the owners of the premises concerned have appealed, and the board of zoning appeals has, also, appealed; and the two appeals are here presented by a single record, whose review by this tribunal depends upon the effect to be accorded the sentence at the close of section (c) of paragraph 35 of the Zoning Ordinance: "An appeal may be taken from the determination of the Baltimore City Court to the Court of Appeals."

The argument on this appeal has embraced a number of questions, but this decision will be confined to the validity

of the order of the board of zoning appeals, and the right of an aggrieved party to an appeal from the judgment of the Baltimore City Court.

The constitutionality of the general provisions of Ordinance No. 1247, which was passed on March 30th, 1931, by the Mayor and City Council of Baltimore, and is known as the Zoning Ordinance, is no longer a subject of controversy. *Jack Lewis, Inc., v. Baltimore,* 164 Md. 146, 164 A. 220. The case cited does not, however, prevent an examination of particular provisions of the ordinance with reference to their validity. In fact, by this decision subsection g-3 of section (par.) 32, and subsection b of section (par.) 33 were each held invalid. The first subsection provided that the board of zoning appeals should have the power: g-3. To authorize upon appeal in specific cases such variance from the terms of this ordinance as is necessary to avoid arbitrariness and so that the spirit of the ordinance shall be observed and substantial justice done.

The second subsection bestowed upon the board the discretion to: (b) Grant a permit when there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this ordinance.

In respect to these subsections, Judge Offutt, speaking for the court, said: "Under these particular provisions the board of zoning appeals is in effect given the power to set aside or annul the ordinance as to any given case with no more definite standard or guide than that such action may only be taken when there are 'practical difficulties or unnecessary hardships' in the way of carrying out its strict letter, or where necessary to 'avoid arbitrariness and so that the spirit of the ordinance shall be observed and substantial justice done.' It is, of course, implicit in other provisions of the ordinance that the board is in the discharge of its duties to avoid arbitrariness, to do substantial justice, and not to inflict unnecessary hardship, but under our system of written constitutions it is essential that they accomplish those highly desirable objects in conformity with the restrictions, rules, and limitations which the law itself provides and not in disregard of

them. The grant of a power such as that conferred by those provisions to an administrative agency, such as the board of zoning appeals, must, therefore, to be valid, be so defined and limited that both the citizen and the board may know with certainty what their rights, privileges, and powers under it are. If there are to be departures from its general plan or scheme, in order to supply the necessary elasticity to its efficient operation, they must be protected by such clear and definite guides as those afforded by sections 12, 13, 27, and 29, and may not be left to the unguided discretion of administrative officials. For such phrases as 'practical difficulties,' 'unnecessary hardships,' 'substantial justice,' are too general and indefinite to furnish such a guide, or to mark the limits or control the exercise of the power conferred by those provisions upon the board."

The subsections under consideration in the appeal at bar are within the ruling in the case from which the last quotation was made, since the subject-matter is analogous and the terms are similar or of the same nature.

By paragraph 12 of the ordinance, discretion is conferred upon the board of zoning appeals in a specific case to grant a permit, where otherwise excluded or limited, within one hundred feet of a boundary line between two use districts, for any use permitted in that one of such use districts which has the lower classification, provided that such one hundred foot measurement shall not extend across a street, and that the permit be issued as provided in paragraph 33 of the ordinance.

The legality of the enactments of the zoning statute rests upon its being a valid exercise of the police power, whose fundamental principal is that it is for the general or common good with respect to some matter of public welfare in relation to the safety, order, and morals of the community. In the effort to bring about the greatest good of the greatest number, collective communal action is indispensable and, therefore, the state requires, and may lawfully exact, of every individual that he submit to such restraints in the exercise of his liberty or of his rights of property as may, under the

state and federal constitutions, reasonably be necessary for the common good. *State v. Hyman,* 98 Md. 596, 614, 57 A. 6.

It is upon this principle that the general terms of the ordinance at bar are sustained. The boundaries of the districts and the regulatory measures prescribed with respect to the property within these districts are supported upon the theory of their uniform, equal, and universal application within the territory affected. It is, however, destructive of this principle of equality that the location of a boundary line between two districts of a municipal zoning system, and the respective use of the property within each district, so determined and prescribed with reference to the general good of the municipality, should, within a strip of one hundred feet in width, be obliterated for the benefit of a *particular* property in a specific case. Not only would this constitute a bestowal of a privilege to a private and special interest in opposition to the general benefit which had determined the course of the boundary line, but it would, in effect, constitute a change, *pro tanto,* of that boundary line without reference to the public good and in the *discretion* of the board of zoning appeals.

The only limitation of the discretion so committed to the board is imposed by the reference to paragraph 33 of the ordinance, which provides that the board, after public notice and hearing, in appropriate cases and subject to appropriate conditions and safeguards, may make special exceptions to the terms of the ordinance in harmony with its general purpose and intent, and "(b) grant a permit when there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this ordinance." As is seen by reference to the preceding quotation from the opinion in *Jack Lewis, Inc., v. Baltimore, supra,* the words "practical difficulties," "unnecessary hardships," have been held too general and indefinite to furnish a rule, guide, or standard in the exercise of the power purporting to be delegated by the ordinance to the board of zoning appeals. Similarly, the phrases, "in appropriate cases," "subject to appropriate conditions and safeguards," are in a like cate-

gory and add nothing of definition. *Pocomoke City v. Stand-
ard Oil Co.,* 162 Md. 368, 377, 159 A. 902; *Goldman v.
Crowther,* 147 Md. 282, 308, 309, 311, 128 A. 50.

Furthermore, and of greater gravity, is the attempt to en-
dow the board of zoning appeals with the power to grant a
permit, no matter what may be the plain mandate of the ordi-
nance, "when there are practical difficulties or unnecessary
hardships in the way of carrying out the strict letter of any
of the provisions of this ordinance." In other words, it is
asserted that an administrative board of review may set aside
the ordinance, if it believes the terms of the ordinance pre-
sent, in a specific case, either practical difficulties or unnec-
essary hardships, and may, therefore, grant, within one hun-
dred feet of the division boundary, any permit desired within
the range of the uses allowed in the district of lower classifi-
cation, upon such conditions and safeguards as the board may
see fit to prescribe. Such a grant of undefined, unlimited,
and unregulated discretion in an administrative body is fun-
damentally an arbitrary and unlawful power. *Tighe v. Os-
borne,* 149 Md. 349, 368, 131 A. 801; *Tighe v. Osborne,* 150
Md. 452, 457, 133 A. 465; *Goldman v. Crowther,* 147 Md.
282, 128 A. 50; *Applestein v. Baltimore,* 156 Md. 40, 50,
143 A. 666. See *Bostock v. Sams,* 95 Md. 400, 412-416,
52 A. 665; *Mayor etc. of Baltimore v. Radecke,* 49 Md. 217,
230. Compare *R. B. Construction Co. v. Jackson,* 152 Md.
691, 137 A. 278, where the limited discretion committed was
with reference to varying the dimensions of side yards in
area districts.

It is an unequal and partial law that permits an adminis-
trative board, in its discretion, to free a specific piece of
property from universal regulations and restrictions which
are imposed for the general benefit of all property within
the defined area of which the freed property is a part. On
no sound principle, therefore, can the operation and enforce-
ment of the rules and regulations in force throughout a use
district be dispensed with by an administrative board for the
benefit of a particular piece of property or in individual
cases. 2 *Cooley on Constitutional Limitations* (8th Ed.),

808-810. Since the operation of the power under discussion is restricted to the instant specific case, it partakes of the nature of special legislation for a private interest, and hence finds no basis in the general welfare. See *Bradley v. Board of Zoning Adjustment,* 255 Mass. 160, 150 N. E. 892, 896, 897. The possession of a power to ignore the boundary line between use districts in individual cases, and, within an interior bounding belt of one hundred feet, to grant a use there generally prohibited, would enable the board by repetition to reform the entire boundary line and enlarge the prescribed uses within the area of the belt at the request and for the separate benefit of individuals. Such a result is not consonant with the theory of the legislation, and clearly the statute, which declared that, while the regulations for the several districts might differ from one another, the regulations in each district must be uniform for each class or kind of buildings throughout this district, did not contemplate a change in the division lines between the districts except by the legislative body of the municipality, which was given the power to cure whatever proved to be unjust or unwise by a corrective change or modification in division lines affecting such a major property right as the use and enjoyment of land. Code (Supp. 1929), art. 66B (Acts of 1927, ch. 705).

The court is aware of the pronounced trend of comparatively recent decisions to adopt a liberal construction of constitutional provisions in order to sanction the large measure of power now customarily delegated by legislative bodies to administrative officers and boards. Its own decisions with respect to the statutes on zoning are sufficient illustration of this development, but have not gone so far as is here required to make valid the particular provisions now being considered. A number of the decisions in other jurisdictions, in which the power to vary or suspend, in particular instances, the regulations and restrictions created by statutes prescribing the use and enjoyment of land within defined areas, has been granted to various administrative boards or officers, are cited below; but, while many are closely analogous, the record here seems to present distinguishing circumstances. See *Thayer v.*

*Board of Appeals of City of Hartford,* 114 Conn. 15, 157 A. 273; *Coleman v. Board of Appeal* (Mass.), 183 N. E. 166; *Bradley v. Board of Zoning Adjustment of City of Boston,* 255 Mass. 160, 150 N. E. 892; *Bennett v. Board of Appeal of City of Cambridge,* 268 Mass. 419, 167 N. E. 659; *Fordham etc. Church v. Walsh,* 217 App. Div. 177, 216 N. Y. S. 260; *Id.,* 244 N. Y. 280, 155 N. E. 575; *People v. Connell,* 257 N. Y. 73, 177 N. E. 313; *People ex rel. Helvetia Realty Co. v. Leo,* 231 N. Y. 619, 132 N. E. 912; *People ex rel. Facey v. Leo,* 230 N. Y. 602, 130 N. E. 910; *People ex rel. Sheldon v. Board of Appeals,* 234 N. Y. 484, 138 N. E. 416; *Anderson v. Jeter,* 206 Iowa, 452, 221 N. W. 354; *Downey v. Sioux City,* 208 Iowa, 1273, 227 N. W. 125, 128; *McCord v. Ed Bond etc. Co.,* 175 Ga. 667, 165 S. E. 590; *L. & M. Investment Co. v. Cutler,* 125 Ohio St. 12, 180 N. E. 379; *City of Stockton v. Frisbie & Latta,* 93 Cal. App. 277, 270 P. 270; *Appeal of Perrin,* 305 Pa. 42, 156 A. 305; *Appeal of Ward,* 289 Pa. 458, 137 A. 630.

The difference in facts, not, however, uniformly evident, in these last-cited cases from the pending appeal lessens their weight, and removes any obstacle to the application of the late decisions of this tribunal in point, and of the sound and approved principles they enforce.

Abstractly considered, there is much force in the argument that the board of zoning appeals should have powers of variation and suspension to correct excessive burdens imposed by the enforcement of the regulations in the several districts of a comprehensive zoning system; but, in its concrete result, this rule of expediency to relieve individual hardship is productive of inequality, popular discontent, and inferences or charges of favoritism. In the case at bar, the record shows there was no legal ground for the reversal of the refusal of the buildings engineer to grant the applicant's permit. The division line gave rise to no practical difficulties in its location, because it was on the property line of the dwelling of the applicant and the adjacent garage. Instead of the situation being exceptional, it was common. The property of the applicant had been used exclusively as a dwelling for a great

number of years before the establishment of the zoning system, and is located on a street and in a residential neighborhood which have undergone no marked or significant change in the vicinity of the applicant's premises. There is no evidence of unreasonable or arbitrary conduct in the location of the line, nor of any unnecessary hardship imposed on the property in question. *Fordham etc. Church v. Walsh,* 244 N. Y. 280, 155 N. E. 575. The request was at bottom to vary the zoning map, without reference to the public interest; and the action of the board of zoning appeals in directing the permit to issue was an abuse or arbitrary use of discretion, which well illustrates what would be the danger of departing from approved principles of law, and of surrendering the supremacy of the constituted legislative body in order to sustain and validate an undefined and unregulated discretion in a delegate board of that body.

No matter from what angle the problem is considered, the order of the Baltimore City Court would be affirmed, if this appeal should be entertained.

The appeals in the cases arising under the Zoning Ordinances of Baltimore City have usually been brought here on mandamus proceedings, under a writ of certiorari, or in a suit for an injunction, except in the appeal of *Jack Lewis, Inc., v. Baltimore, supra.* The last-named case was an appeal from an order of the Baltimore City Court, but the right of appeal was not then considered, but it will be on this appeal, although, because of its practical importance, the court has expressed its views on the substantial question before the Baltimore City Court.

The statute gave a party aggrieved by the action of the buildings engineer a right of appeal to the board of zoning appeals (a), and thence to the Baltimore City Court (b), but the statute did not provide for any further appeal to the Court of Appeals or elsewhere (c), as was necessarily done with regard to other subject-matters where an appeal to the Court of Appeals is expressly allowed. *Page v. Mayor etc. of Baltimore,* 34 Md. 558, 564; *Charter & Local Laws of Baltimore City* (Wallace, 1927), art. 1, sec. 6, subsec. 26C,

E, pp. 38, 40, sec. 841P, p. 567, 841V, p. 571, 841W, p. 574; (a) *Cook v. Howard,* 155 Md. 7, 10-12, 141 A. 340; *Goldman v. Crowther,* 147 Md. 282, 310, 128 A. 50; (b) *Tighe v. Osborne,* 150 Md. 464, 133 A. 465; *State v. Rutherford,* 145 Md. 363, 370, 125 A. 725; *Applestein v. Baltimore,* 156 Md. 40, 55, 56, 143 A. 666; Code (Supp. 1929), art. 66B, sec. 7; (c) *Tighe v. Osborne,* 150 Md. 452, 459, 464-466, 133 A. 465; *Id.,* 149 Md. 371, 372, 131 A. 801.

As the ordinance may only enact what the statute has authorized the municipality to do, the provision in the Zoning Ordinance for an appeal from the judgment of the Baltimore City Court is invalid. The proceedings on appeal in the Baltimore City Court were not within the ordinary common-law jurisdiction of that court, but in the exercise of a special authority under a statute which granted no further appeal.

It is well settled that in such case, no appeal to this tribunal lies. The rule is that where an inferior court exercises a special limited jurisdiction which is conferred by statute, no appeal from its decision in such cases lies to this court unless expressly given by the statute. *Cumberland & P. R. Co. v. Pa. R. Co.,* 57 Md. 267, 274 (eminent domain); *Margraff v. Cunningham's Heirs,* 57 Md. 585, 589 (tax sale); *Wilmington & S. R. Co. v. Condon,* 8 G. & J. 443 (eminent domain); *Savage Mfg. Co. v. Owings,* 3 Gill, 497 (eminent domain); *Webster v. Cockey,* 9 Gill, 92 (closing road); *Lammott v. Maulsby,* 8 Md. 5 (indenture in orphans' court); *Baltimore etc. Turnpike Co. v. Northern Cent. Ry. Co.,* 15 Md. 193 (eminent domain); *Meyer v. Steuart,* 48 Md. 425 (tax sale); *George's Creek etc. Co. v. New Central Coal Co.,* 40 Md. 425 (eminent domain); *Warfield v. Latrobe,* 46 Md. 123 (contested election); *Hough v. Kelsey & Gray,* 19 Md. 451, 457 (appeal from justice of peace); *State v. Bogue,* 5 Md. 352 (appeal from justice of peace); *Carter v. Dennison,* 7 Gill, 158 (order in insolvency); *Williams v. Williams,* 5 Gill, 85 (order in insolvency); *Dolfield v. Western Md. R. Co.,* 107 Md. 584, 597, 69 A. 582 (eminent domain); *New York etc. Co. v. Midland Min. Co.,* 99 Md. 506, 58 A. 217 (eminent domain); *Hopkins v. P., W. & B. R. Co.,* 94 Md.

263, 51 A. 404 (eminent domain) ; *Moores v. Bel Air Water etc. Co.,* 79 Md. 391, 29 A. 1033 (eminent domain) ; *Francis v. Weaver,* 76 Md. 457, 25 A. 413 (inquisition) ; *Greenland v. County Com'rs,* 68 Md. 59, 11 A. 581 (opening road) ; *Hendrick v. State,* 115 Md. 552, 81 A. 18 (appeal from justice of peace) ; *Rayner v. State,* 52 Md. 368 (appeal from justice of peace) ; *Judefind v. State,* 78 Md. 510, 28 A. 405, 22 L. R. A. 721 (appeal from justice of peace); *Green v. State,* 113 Md. 451, 77 A. 677 (appeal from justice of peace) ; *Wilmer v. Bagnelle,* 150 Md. 696, 137 A. 916 (appeal from people's court) ; *Norris v. State,* 158 Md. 700, 150 A. 261 (appeal from people's court).

*Appeals in Nos. 8 and 9 dismissed, with costs to the appellees in each case.*