ELIZABETH GIST ET AL. *vs.* W. H. OWINGS ET AL.

*Opening County Roads Upon Petition — County Commissioners Cannot be Required to Condemn Public Land—Appeal.*

Code, Art. 25, provides for the opening of roads in counties upon the petition of citizens alleging the new road to be required by the public convenience.   The County Commissioners are authorized to contract with the owner of the land through which the proposed road is to run or to appoint examiners to ascertain the damages of the land-owner, subject to the review and judgment of Commissioners.   *Held*, that the statute does not authorize the opening of a road in this manner through land already owned by the County Commissioners and that consequently the Circuit Court was without jurisdiction to require the Commissioners to open a road through such property.

Upon appeal to the Circuit Court under Code, Art. 25, from the refusal of the County Commissioners to direct a new road to be opened, the Circuit Court upon reversing their judgment has no power to appoint examiners to view the property and to ascertain the damages.

Appeal from the Circuit Court for Carroll County (REIF-SNIDER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Benj. F. Crouse* and *Guy W. Steele,* for the appellants.

*James A. C. Bond* (with whom were *John Milton Reifsnider* and *Francis Neal Parke,* on the brief), for the appellees·

BOYD, J., delivered the opinion of the Court.

The appellees applied to the County Commissioners of Carroll County to open a public road, which after passing through the lands of certain parties named, was to go "to the Alms House farm, thence through the Alms House farm, north one-fourth of a mile, until the proposed road reaches the public road, leading from the Alms House farm to the city of Westminster."   The appellants objected to the opening of

the road and assigned among other reasons that it would be against public policy to open a road through property already dedicated by the county to public use, and that the County Commissioners had no power to open a road through the Alms House farm. The petitioners for the road asked that those objections be dismissed because they did not assign valid or sufficient reasons for refusing to open the road, but the County Commissioners overruled the motion and the petitioners then asked them to hear and determine, first, whether the public convenience requires the opening of the proposed public road; second, whether the opening of it would be such an interference with the public uses to which the Alms House farm is devoted, as to make it unlawful for the Commissioners to consent to open it through that farm ; and, third, whether it could be opened in such manner as not to so interfere with the public uses to which that farm is devoted as to make it unlawful for the Commissioners to consent to open it. A hearing resulted in an order being passed by the County Commissioners refusing the petition. From that order the petitioners appealed to the Circuit Court for Carroll County. The objectors made a motion in that Court to quash the proceedings, and assigned as one reason therefor that the proposed road was to pass over and across the Alms House farm. That motion being overruled they moved to dismiss the appeal, which was also overruled. The case was then submitted to a jury which rendered a verdict for the petitioners. A motion in arrest of judgment was made and overruled. The Court then passed an order appointing three persons examiners to meet on the premises for the purpose of viewing the grounds over which the road was to pass (including this farm) and locating and laying out the road in such manner as would in their judgment best promote the public convenience. The order directs the examiners in detail what to do, and then to report their proceedings to the County Commissions. A motion to strike out that order was made on the ground that the Court had no power to appoint examiners, etc., but that was overruled and this appeal was then taken.

It is conceded that this Court has no power to review the action of the Circuit Court in cases of this character, unless it acts beyond the scope of its authority, or is without jurisdiction in the premises—the jurisdiction conferred on the Circuit Court being a special one and there being no appeal to this Court provided for. As a jurisdictional question attacking the very foundation of the proceedings has been raised, it is proper to consider it before referring to what we deem minor points. The petition to open the road in controversy is based on the provisions of Art. 25 of the Code of Public General Laws, and the important question is whether those provisions are applicable to a road which is proposed to be opened through a farm already owned by the county. The argument on this branch of the case was for the most part addressed to the question whether property which has been once taken or acquired for public purposes can be subjected to other public uses without express legislative sanction, but that is not all that is involved, as it would seem to be clear from a careful examination of the provisions of the statute under which this petition was filed that they do not apply to a case such as that before us. Section 84, of that Article, provides for a notice being published by the petitioners for the road of their intention to apply to the County Commissioners and sec. 85 authorizes counter petitions to be filed, and provides that " when they are, the County Commissioners shall take into consideration the reasons contained in the counter petition, and such other testimony as may come before them, and determine the case as in their opinion shall seem right and proper." Then by sec. 86, it is provided that when the County Commissioners shall decide that it is expedient that a road be opened " they may contract with the owner or owners of the land through which the said road is intended to run, for the right of way over the land necessary for said road, if he, she or they be competent to contract," and in case they shall so contract they are to have a plat made, filed and recorded with the deed or deeds, " and the lands so conveyed shall be and become thenceforth the property of the county, in the same manner and to the same

extent as other county roads, and no further, subject to the public rights of way over the same." When they deem it expedient to appoint examiners to view the grounds, they are authorized to appoint three persons " who shall be freeholders in the county, and not interested in or holding lands through which the road is proposed to be opened," etc. By subsequent sections the duties of the examiners are prescribed. They are to determine whether the public convenience requires the road to be opened, and if they so determine are to " value and ascertain the damages that may be sustained by each person through whose lands the road may pass * * * * * taking into consideration the advantages and disadvantages of the same, if any," and are to report their proceedings to the Commissioners, etc. The Commissioners are authorized " to pass judgment thereon, and affirm or reject the same, or order it to be amended in their discretion." Section 99 provides that " In all cases where the County Commissioners shall adjudge that a road be opened or altered, they shall, at the usual time for levying taxes, levy on the assessable property of the county a sum sufficient to open or alter said road, and also sufficient to pay the damages awarded, if it shall have been adjudged that the damages be paid by the county, or such proportion of the said sums as shall have been adjudged to be paid by the county. These and other provisions show that the authority vested in the County Commissioners by this statute, is to open roads through the lands of others and not through lands already owned by the county. When we consider the power vested in the Commissioners by the statute, in passing on the questions involved in opening a road, it is evident that it did not contemplate such proceedings with reference to county property. They act in a judicial capacity—" pass judgment " on the return of the examiners, " give judgment against the petitioners for the costs incurred by any persons defending against the claim of the petitioners, when the case shall be decided in favor of such defendant," and do other acts that would be utterly inconsistent with their being interested parties in the proceedings, to the extent of passing on their own land.

But in addition to that there could be no reason for providing such methods to enable the county to open a road over its own land..

The statute furnishes two ways of obtaining lands through which roads contemplated by it are to be opened—one by contract and the other by proceedings taken by the examiners which are in the nature of a condemnation. It is manifest that it did not contemplate the Commissioners making a contract with themselves, and it would seem to be equally clear it did not intend that the other method should be adopted to obtain property already belonging to the county. The statute prohibits the Commissioners from appointing examiners who are "interested in or holding lands through which the road is proposed to be opened," and other provisions are made to secure impartial and unprejudiced persons and yet, if the appellee's contention be right, the representatives of the land, the County Commissioners, must appoint the examiners, as there is no provision for an appointment by any other authority.

The power thus vested in the Commissioners to open roads is special and limited and must be determined by the statute, and as the machinery provided by it is not applicable to a case where the road is sought to be opened through property already owned by the county, it follows that the petitioners have no right, under the statute, to compel the Commissioners to open the road through this farm which belongs to the county. That being so the Court below had no power to require the Commissioners to do so and there was therefore error in passing the order appealed from. It is not necessary to determine whether the County Commissioners can, without express legislative authority, open a road through county property, such as this farm, if in their judgment the public convenience requires it, as the statute under which these proceedings were instituted does not apply to such a case, and it is only applicable to a road that is to be acquired for the county through the lands of other owners, by one of the two methods already mentioned. The appeal to the Circuit Court did not give it jurisdiction to review the refusal of the County

Commissioners to open a road through county property, as they were not authorized to do so under these proceedings. It is true that the statute had to be resorted to in order to open the road through the lands of the other parties named in the petition, but it is not proposed to open a road simply through those lands, but also through the Alms House farm and the order of the Court expressly includes the latter.

It will not be out of place to add that the Court below also exceeded the power vested in it, independent of the question we have considered above, when it appointed examiners. The statute confers that power on the County Commissioners alone, and sec. 82 of Art. 5 of the Code does not apply to an interlocutory order of that character.

It was suggested at the hearing that there might be some question whether the order appealed from was such a final one as could now be reviewed by us, but inasmuch as we are of the opinion that the petitioners did not have the right under this statute to compel the Commissioners to open the road through the county farm it would be a useless proceeding to execute the order of the Court below and then finally have it determined that the Court had no power to pass such an order. As the question goes to the root of the whole proceeding, it can be as well determined now as hereafter and it is right that it should be, before further expense is incurred.

We do not deem it necessary to refer to other points raised, but for the reasons we have given we must reverse the order appealed from.

*Order reversed, appellees to pay the costs.*

(Decided June 17th, 1902.)