## BARNETT ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR CHARLES COUNTY

[No. 97, October Term, 1954.]

*Decided March 21, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles C. G. Evans,* with whom were *Frank T. Gray* and *Piper & Marbury,* on the brief, for appellants.

*W. Giles Parker,* with whom was *Robert T. Barbour,* State's Attorney for Charles County, on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Charles County ratifying and confirming the inquisition of a sheriff's jury in a case instituted by the County Commissioners of Charles County for the acquisition of about .16 of an acre of ground for the extension of a county road to the Potomac River. The proceeding was brought under Code (1951), Art. 23, sec. 308, and after a demurrer to the petition had been overruled, the jury returned an inquisition to which exceptions were taken. It is conceded that in such a proceeding there is no appeal to this court except on jurisdictional grounds, for, as was said in *Brady v. Road Directors,* 148 Md. 493, 498, "* * * if that court [the trial court] had jurisdiction of the subject matter, and if those statutes are unrepealed and this proceeding was properly instituted under them, its determination is final, and cannot be reviewed on appeal to this court." Cf. *Dolfield v. Western Md. R. Co.,* 107 Md. 584, and *Cumberland Valley R. Co. v. Martin,* 100 Md. 165. In the *Brady* case, it was held that the Road Directors of Allegany County, under Chapter

262, Acts of 1904, were expressly empowered by that local law to utilize the provisions of Code (1924); Art. 23, sec. 331, *et seq.* (now codified as Art. 23, sec. 308, *et seq.*); and that the provisions of Art. 33A of that Code (Ch. 117, Acts of 1912, and Ch. 463, Acts of 1914) did not supplant the local law, in view of the saving clause relating to highways. Code (1924), Art. 33A, sec. 15, now, as amended, Code (1951), Art. 33A, sec. 17. Cf. *Koehler v. State Roads Commission,* 125 Md. 444.

The question presented in the instant case is whether the County Commissioners of Charles County had the power to invoke the procedure set up in section 308. That section provides: "If any corporation incorporated under the laws of this State which shall be authorized to acquire by condemnation any land, earth or stone, or any interest therein, can not agree with the owner * * * application may be made by any such corporation to any judge of the circuit court for the county in which said land or other materials may lie * * *; and thereupon the said judge * * * shall issue his warrant, directed to the sheriff of said county * * , requiring him to summons a jury * * *." This section has not been changed since its adoption by Ch. 471, Acts of 1868 (sec. 170) as a part of the general corporation law of 1868. As we have noted, the general condemnation law contained in Art. 33A specially excepted highway cases, although it made the new procedure available to the State Roads Commission.

It has been said that the purpose of Art. 33A was "to reform condemnation procedure and make it uniform, especially by substituting for a 'sheriff's jury', which had long ago fallen into disrepute, a 'jury in court'." *State v. Ambrose,* 191 Md. 353, 366. The procedure set up in section 308 can only be invoked by a corporation having authority "to acquire by condemnation", and we must look elsewhere for that authority.

The appellee contends that power to utilize the procedure of section 308 is expressly conferred by Code (1951), Art. 25, sec. 127, which provides:

"Whenever the county commissioners shall decide that it is expedient that a road be opened as provided in the proceding section they may contract with the owners of the land through which the said road is intended to run for the right of way over the land necessary for said road, if he, she or they be competent to contract; and in case the said county commissioners shall so contract they shall cause a plat of the said road to be made by a competent surveyor and filed and recorded in the office of the clerk of the circuit court for the county in which the deed or deeds conveying the said lands are required to be recorded, which said plat shall be referred to in, and shall be a part of said deed or deeds, and the lands so conveyed shall be and become thenceforth the property of the county, in the same manner and to the same extent as other county roads, and no further, subject to the public rights of way over the same; and it shall be lawful for the said county commissioners of any county so to contract for land for a public wharf, drains for county roads or other public use or uses, which said land shall be the property of said county, subject to said use or uses; and *whenever the County Commissioners shall deem it expedient that examiners should be appointed to view the grounds for the purpose of opening, altering or closing a road, they shall appoint three persons as examiners, who shall be freeholders in the county, and not interested in or holding lands through which the road is proposed to be opened, altered or closed;* but the appointment of examiners shall not prevent the said County Commissioners at any time thereafter from contracting with the owner or owners, as above provided; and the County Commissioners of any county are authorized, when the county roads cannot be conveniently drained by drains along the said county roads, to make the same upon the property outside the limits thereof; and they shall contract for the lands that may be required for that purpose, as above provided, or they may proceed to condemn the lands that may be necessary for the purpose under the provisions of Sections 308 to 313, both inclusive of

Article 23, title corporations." (Italics supplied.)

The procedure for the acquisition of lands by county commissioners for public roads, after public notice and hearing, by the appointment of examiners to make a plat, fix damages and report to the commissioners, subject to a right of appeal to the circuit court and a jury trial, was first adopted by Chapter 220, Acts of 1853, and incorporated without substantial change in the Code (1860), Art. 28. See *Ertter v. North Washington Cem.*, 200 Md. 251, and *Gist v. Owings,* 95 Md. 302, 306. By Chapter 364, Acts of 1884, sec. 15 of Art. 28 was repealed and re-enacted, in substantially the same form as above quoted, as Code (1951), Art. 25, sec. 127, the italicized portion representing the language as it stood prior to the amendment, except that in the Code of 1888 semi-colons were substituted for commas in several places. We do not regard the change in punctuation as material to the question presented.

The Act of 1884 accomplished several changes. For the first time it spelled out an authority to contract with the owners for lands intended for road purposes and expressly extended the contractual power to acquisitions for public wharfs, drains for county roads, or other public uses. County commissioners had previously been granted the power to establish public landings, by following the established procedure for the opening of a public road. Code (1951), Art. 25, secs. 144, 145 (Ch. 120, Acts of 1823) ; *Chaney v. Co. Commissioners of Anne Arundel Co.,* 119 Md. 385. But there were no comparable provisions authorizing the acquisition of lands for road drainage. This hiatus was bridged in the Acts of 1884 by the provision that the commissioners could contract for such lands or proceed under the provisions of Article 23, sec. 308. There is no suggestion that the examiner procedure was thereby extended to lands acquired for drainage, and conversely, the use of the words "that purpose" and "the purpose", in the concluding clause of section 127, seems definitely to limit resort to Art. 23, sec. 308, in cases where the purpose was to acquire

lands for drainage as spelled out in the clause immediately preceding. To give the concluding clause a wider application, as contended by the appellee, would do violence to the language employed, and extend a third alternative that would vitiate the established procedure and the greater protection to property owners that it affords. As the appellants point out, the Legislature might well have considered that there was less danger in extending the summary procedure by way of a sheriff's jury to cases of acquisitions to drain roads, presenting only an engineering problem, than to cases of acquisitions for opening or closing roads, or establishing public wharves or landings, where debatable questions of public policy and expediency might be involved. In any event, we find no justification for disregarding the language, which seems clearly to relate the summary procedure to the single purpose of acquiring lands for drainage. If a summary method of acquiring lands for other public purposes is desirable, it should be provided by a clear legislative grant of power, and not by a forced construction.

Nor do we agree with the appellee's contention that there is a general power of condemnation for road purposes in the County Commissioners for Charles County. It is true that Code (1951), Art. 25, sec. 1, declares the county commissioners of each county to be a corporation, and sec. 2 gives them control over all county roads, but Charles County was expressly excluded from the grant of power in sec. 3 "To acquire by purchase or condemnation real or leasehold property needed for any public purpose * * *." The power to "open, alter or close any public road", contained in sec. 21, is implemented by sec. 127, above quoted. It has been generally held that powers granted to county commissioners should be strictly construed, for they confer a special and limited jurisdiction. See *Chaney v. Co. Commissioners of Anne Arundel Co., supra; Brady v. Road Directors, supra;* and *Cumberland Valley R. Co. v. Martin, supra.*

It is contended, however, that the special power to utilize the examiner procedure, conferred by section 127 of Article 25, is a power of "condemnation" within the meaning of section 308 of Article 23. Under this construction any corporation possessing the power of eminent domain by any means whatever, could resort to a sheriff's jury. If we assume, without deciding, that the examiner procedure is a method of condemnation, and not merely "in the nature of condemnation" as said in *Gist v. Owings, supra,* (p. 306), the problem of construction remains. Section 308 can be given effect as applicable to cases where a general power to condemn has not been otherwise implemented, as in Code (1951), Art. 25, sec. 3(b), *supra,* from which Charles County was expressly excepted. We think section 308 should not be construed so broadly as to enlarge by implication the limited power conferred by section 127. As was said in *Brady v. Road Directors, supra* (p. 501): "* * * it is well settled that the appellee has no power of eminent domain unless the Legislature has directly or by necessary implication conferred that power upon it, and that in such a case the manner of procedure provided in the enabling act must be strictly followed. *Lewis on Eminent Domain,* sec. 240 *et seq.*" Since section 127 is the only source of the power, it could hardly be read into section 308, shorn of its limitation. Moreover, the limitation seems implicit in the amendment to section 127, enacted in 1884, which is the later enactment.

We find nothing in the local law of Charles County that would confer a wider power than that conferred by the Public General Laws. The Code of Public Local Laws (1930 ed.), Art. 9, sec. 231, *et seq.* (Ch. 126, Acts of 1918), created a Board of Road Commissioners, who were directed to take over the duties of the Commissioners. Sec. 233, dealing with the acquisition of lands for road drainage, spelled out the same examiner procedure as contained in the general law. We need not pause to inquire what effect this provision had upon the concluding clause of Code (1951), Art. 25, sec. 127, as we are not

here concerned with road drainage. Sec. 235 of Art. 9 only conferred on the Board of Road Commissioners the same powers in regard to opening roads as had been conferred by the General Laws upon the County Commissioners. By Chapter 69, Acts of 1951, these powers were revested in the County Commissioners of Charles County.

For these reasons we conclude that the appellee had no power to invoke the summary proceeding by way of a sheriff's jury, for the purpose of extending the county road to the Potomac River, or establishing a public landing there, and hence there was a lack of jurisdiction. It is unnecessary to discuss the other points argued. The proceeding should be dismissed, without prejudice to the appellee to institute another form of proceeding.

*Order reversed, with costs.*